JOHN H. MING et al., Respondents, *v.* AUSTIN CORBIN, Appellant.

Where an appeal is based simply upon an exception to a denial of a motion, made at the close of all the evidence on trial, for a direction of a verdict in favor of the appellant, it cannot be sustained unless it appears not only that there were no controverted questions of fact, simply questions of law for the court, but also that the jury did not correctly determine those questions.

If a question of law has been erroneously submitted to the jury, and decided as it should have been by the court, no one is prejudiced by the error, and so, there is no ground for appeal.

A contract for the sale of several distinct and separate items of property is entire where the promise by the purchaser is made conditional upon entire performance by the vendor.

In the absence of such a condition and where the price to be paid is apportioned to each item or is left to be implied by law, the contract is severable, and when the purchaser has received and accepted one of the items, it is no defense to an action to recover the purchase price that the other items have not been delivered; he is simply entitled to his damages, if any, because of the non-delivery.

Reported below, 68 Hun, 161.

(Argued April 18, 1894; decided May 1, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order

made March 17, 1893, which affirmed a judgment in favor of plaintiffs entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought to recover a balance claimed to be due on a sale of certain bonds by plaintiffs to defendant.

The facts, so far as material, are stated in the opinion.

*William J. Kelly* for appellant. The contract of purchase was entire. Defendant purchased the two classes of securities, and before plaintiffs can recover they must show performance of the contract on their part. (*Kein* v. *Tupper*, 52 N. Y. 550 ; *Appleby* v. *Myers*, L. R. [2 C. P.] 3651 ; *Butler* v. *Butler*, 77 N. Y. 472; *Blanch* v. *Cocheran*, 8 Bing. 14; *Champlin* v. *Rowley*, 18 Wend. 187 ; *King* v. *Leighton*, 100 N. Y. 386 ; *Houck* v. *Muller*, L. R. [7 Q. B. Div.] 92.) There was no question of fact for the jury on the evidence in this case. (*Somer* v. *Meeker*, 25 N. Y. 361; *Fish* v. *Davis*, 62 Barb. 122 ; *Vassar* v. *Camp*, 11 N. Y. 441 ; *Treva* v. *Wood*, 36 id. 307.)

*Charles A. Morgan* for respondent. The motion of the defendant at the close of plaintiffs' case to dismiss the complaint, and his motion upon the whole case that the court direct a verdict for defendant, and that the complaint be dismissed, were properly denied ; and the submission by the court of the whole case to the jury, in view of the verdict rendered, was not error for which the judgment will be reversed. (*O'Neil* v. *James*, 43 N. Y. 84 ; *Thompson* v. *Roberts*, 65 U. S. 233; *Vanderbilt* v. *E. I. Works*, 25 Wend. 665 ; *Tipton* v. *Feitner*, 20 N. Y. 423 ; *Avery* v. *Wilson*, 81 id. 341.)

O'BRIEN, J. This action, commenced in 1878, is founded upon a business transaction between the parties in 1872. The litigation has been in progress ever since with varying results at the Circuit and the General Term, and this appeal requires us to review a judgment in favor of the plaintiffs recovered on the third trial. The general contention of each party upon

the argument in this court is simple enough, but it involves the consideration of numerous facts and some questions of law, or, perhaps, mixed questions of law and fact, not entirely free from difficulty. The verdict for the plaintiffs was for a balance of the purchase price of certain bonds sold and delivered to the defendant by the plaintiffs. The contention of the learned counsel for the defendant is that the judgment is erroneous for the reason that upon the undisputed facts the bonds were delivered pursuant to a contract, entire in its nature and legal effect, whereby the plaintiffs sold them to defendant with other securities which were never delivered. That the plaintiffs before they can be permitted to recover must show performance on their part of all the provisions of this entire contract. The only way that the defendant has raised any question of law is by a single exception to the denial of his motion for the direction of a verdict in his favor at the close of all the testimony. In this condition of the record the appeal cannot be sustained unless it appears that there were no controverted questions of fact for the jury, but simply questions of law for the court, and that the jury did not correctly determine the questions of law erroneously submitted to them by the court. If the case involved purely a question of law and nothing else, and if that question has been well decided, the judgment is not erroneous because the decision was by the jury and not the court. It is the duty of the court to decide the questions of law arising in the case, but if a question of law has been erroneously submitted to the jury, and decided as it should have been by the court, no one has been prejudiced by the error.

In order to get a clear view of the case it is necessary to refer to the facts with some detail. The plaintiffs were residents of Helena, in the territory of Montana, and engaged in buying and selling securities there. The defendant was a banker and broker in New York. In March, 1872, one Sherwood, of Montana, being about to visit New York, had some conversation with the plaintiffs' firm in regard to placing some of their securities. This led to a letter from him, written from

the defendant's office in New York under date of March 6, 1872, in which he informed the plaintiffs that he could place for them $5,000 county bonds and same amount territorial scrip at 85. Neither the county bonds nor the scrip were otherwise described, but the letter was written evidently after a conversation between Sherwood and the defendant. On receipt of this letter the plaintiffs telegraphed Sherwood on the 19th of March in defendant's care as follows: " Will sell five each bonds and territorial warrants, at eighty-five for face and interest, and give you two hundred. If wanted, telegraph." This was the first step on the part of the plaintiffs in making any contract with the defendant, and it will be seen that the particular bonds, or the character of the warrants, or the rate of interest payable, was not specified, but Sherwood testifies that his conversation with defendant related to bonds of the county of Lewis & Clark and convertible territorial warrants. The next day the defendant in Sherwood's name telegraphed the plaintiffs as follows: " Send them; draw on me." Subsequently, on the same day, defendant sent the following telegram, also in Sherwood's name: " Send bonds, cannot use warrants unless to be bonded in June." The proof is that the plaintiffs intended to fill the order with warrants they then had on hand, some of which were fundable in June and some not, but on receipt of the telegram they regarded that part of the order relating to the territorial warrants as withdrawn or at least suspended for the time, and that part relating to the bonds as required to be immediately filled. The plaintiffs' position in respect to the warrants appears from the following letter written by them on the 20th of March, and addressed to Sherwood:

" Your two telegrams of the 20th are at hand. We will ship $5,000 in bonds to-morrow night as we were unable to get them ready for to-night's coach. All territorial warrants issued prior to Dec. 1st, 1871 (under which head ours come), are to be bonded in June at 12 per cent interest, but from the tenor of your second dispatch we think you understand this fact, and are not certain whether ours are of the description

or not. But as we are not certain about it, we will not ship till we hear further from you. As a matter of course we cannot allow you more than $100 for sale of bonds alone. In case you want the warrants you must let us know. The bonds will reach you the day after this letter comes to hand.

> " Very truly yours,
> " J. H. MING & CO."

On the next day, March 21, the plaintiffs shipped the county bonds to the defendant of the face value of $5,300. Nothing more was heard from the defendant in regard to the warrants until April 9, when the defendant telegraphed the plaintiffs to " send the five thousand territorial warrants," but in the meantime, and on March 26, the plaintiffs sold them to another party at eighty-five for face and interest, the same price for which they were to sell them to the defendant, and no warrants were ever delivered to the defendant. Now, it may be that there was a contract entire in its nature for the delivery of the bonds and warrants without any specification as to their precise character or the interest which they drew, but the defendant was not quite satisfied with the contract in that form. His subsequent telegrams and letters were in such terms as to warrant the jury in finding that they left the plaintiffs in doubt whether he required the delivery of the warrants or not. He certainly did not want them unless they were of a certain kind not specifically mentioned in the plaintiffs' written offer to sell. It appears that there was then in the market two classes of warrants, one class convertible into bonds in June and the other payable by the treasurer in cash at some future time. The plaintiffs evidently acted in good faith in selling the warrants on hand to another party, as they got no more for them than the price which, in the end, it turned out that the defendant was willing to pay. The true situation was revealed to the plaintiffs more clearly by a letter addressed to them by the defendant under date of April 13. In this the defendant informed them that he had about six weeks before purchased the bonds and warrants from Sherwood. That he understood

the bonds drew fifteen per cent interest instead of twelve, and was astonished to find on their arrival that they drew but twelve. That his first impression was to hold them subject to their order, but on reflection concluded to place them at best rates without loss, hold funds subject to their order, and trust them to make the thing satisfactory when the situation was understood. That acting upon that he had sold the bonds and placed to their credit $4,400, subject to their check, and had directed his cashier to send them a check book. There was then some discussion in the letter in regard to interest on the bonds accruing before they arrived in New York, which is not material. The defendant then proceeded to say that, "As to the adjustment of this matter generally, as to the misunderstanding, I shall leave it pretty much to you." That the bonds were worth $350 less than he expected, and that no one was to blame for the misunderstanding. That he was willing to do his part to harmonize, so that no one would lose much and all be content. He then offered to deduct from the proceeds of the bonds a gross sum of $100, which he should retain himself, leaving $4,341.77 to be paid to the plaintiffs. He then added: "I will be satisfied and try to make up the deficiency in something else. * * * Let me know if I am not under all the circumstances pretty reasonable." In a postscript to this letter the defendant said: "I received your letter as to territorial warrants and ordered them forwarded (by telegram) some days ago." The plaintiffs' offer was to sell bonds and warrants. It was distinct and definite, and the parties became bound only when it was accepted by the defendant in terms equally definite. It is easy to see that the caution with which the defendant worded his telegrams of acceptance produced in the minds of the plaintiffs the doubt and uncertainty which followed. At first he said "*send them,*" which, of course, meant both bonds and warrants. But he immediately followed this by another dispatch to "*send bonds,*" which meant the bonds alone, saying that he could not use the warrants unless fundable in June. But he omitted to say that even if they were that he wanted them

sent or would accept them, and it was not till April 9, nineteen days after the bonds had been shipped, that he gave an unequivocal order to ship the warrants. To hold that this completed a contract to be performed only as an entirety, and that could not be performed distributively, would, as it seems to me, be going quite too far.

On the 29th of April the plaintiffs accepted the defendant's last proposition in the following letter: " Your favor of April 13th, notifying us of receipt of bonds is at hand. They were a long time on the road and we were quite anxious concerning them. The misunderstanding as to the kind of bonds we offered for sale we regret, and we certainly supposed Mr. Sherwood and yourself were posted as to the new issue of bonds, 12s, in accordance with a law of the legislature of '71, which forbids the issue of any bonds hereafter at a greater interest than twelve (12) per cent.

"Your letter states that you think that $4,341.77, which brings the bonds down to a net figure of about 81 1-2c., would be fair for all concerned. In view of the fact that Sherwood's telegram stopped the shipment of territorial warrants, a portion of which you could have used (as it afterwards seemed) to good advantage, and that the transaction was conducted by you without any profit, we accept the change."

The plaintiffs subsequently drew their check upon the defendant for $3,500, which was paid, and afterwards for the balance, which the defendant refused to pay for the reason that the warrants had not been delivered. One of the plaintiffs testified that the bonds and warrants drew the same rate of interest and were of equal value in the market, so that it could not be said, as matter of law, that the warrants were the principal consideration which induced the purchase, or that the omission to deliver them frustrated the objects of the contract. The case could not have been taken from the jury on that ground. A contract is entire when the parties intend that the promise by one party is conditional upon entire performance of his part of the contract by the other party. The contract is said to be severable when the part to be performed

by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item or is left to be implied by law. (2 Parsons on Cont.; *Tipton* v. *Feitner*, 20 N. Y. 423; *Pierson* v. *Crooks*, 115 id. 554.)

Whether a contract is entire or to be taken distributively is often a question of intention and frequently one of fact. The original contract was for the delivery of two classes of securities at a common price, but it cannot be said, as matter of law, that the plaintiff then became bound to deliver bonds bearing a certain rate of interest or warrants fundable in June, and the subsequent correspondence related to these unsettled questions. The defendant, in his letter of April 13th, made a new proposition, which was subsequently accepted by the plaintiff, to accept delivery of a larger amount of bonds at a reduced price, and he promised to pay for them a specified sum, by honoring the sellers' check at sight. This promise was not conditioned upon subsequent delivery of the warrants. There is nothing in the letter to warrant such an inference. The contrary conclusion finds some support in the fact that he agreed to pay the purchase price at once, and did pay $3,500, which he was not bound to do if the contract was entire and had not been severed by the correspondence. If the intention of the parties was not clear it was proper to submit the question to the jury. It could not be held that the defendant's contention was conclusively established since at least opposing inferences and different conclusions were possible. The question was not whether the parties had made an entire contract in the first instance, but whether it was such at the close of the correspondence, or when the plaintiffs accepted defendant's proposition to pay another price for another amount of bonds. Nor was the question one whether the defendant had or had not waived the delivery of the warrants, but whether the parties intended, in making and accepting the last proposition, that such delivery should precede the defendant's obligation to pay any part of the purchase price of the bonds. The defendant's right to insist upon the delivery of the warrants

and to claim damages for the non-delivery may be conceded, but that would not prove that the contract was entire and had not been severed by the conduct of the parties. The defendant's telegram to send on the bonds was open to the construction which the plaintiffs put upon it, that he wanted them at all events. Except for this dispatch the bonds and the warrants would doubtless have been sent together. It was competent for the jury to find that by this telegram, the defendant's letter of April 13 and the plaintiffs' acceptance of the proposition then made, even if the delivery of the warrants was not waived, yet the parties had expressed an intention that the bonds and warrants might be delivered each at different times; that the parties had apportioned to each a different and distinct price or portion of the whole consideration; that the right to deliver one was not dependent upon the delivery of the other, and as no time of credit was given payment for each class of securities was to be made upon delivery. The correspondence was fairly open to the inference which the jury evidently drew, that the parties intended to so change and shape the contract as to render it capable of performance on either side in parts, and so not to be taken as entire, but separate or divisible. The bonds to be delivered, accepted and paid for at once; the warrants subsequently, when the misunderstanding as to their form and character had been cleared away. That the contract had thus been severed by the parties is made clearer by the form of the pleadings. The plaintiffs alleged in their complaint the sale and delivery of the bonds at a specified price, and nothing else. The defendant did not plead non-performance of an entire contract as a defense, or at all, but alleged as a separate defense, " by way of counterclaim," that the plaintiffs had sold to him and agreed to deliver, among other things, convertible territorial warrants to be of the par value of $5,000 at eighty-five; that they had not delivered them, and demanded judgment dismissing the complaint and for his damages for failure to deliver. The defense was not that an entire contract for the sale and delivery of bonds and warrants was unperformed,

but that the defendant had sustained damages in consequence of the non-performance of a separate contract to deliver warrants. But the court submitted to the jury, not only the defendant's claim for damages under the counterclaim, but also the question whether the contract was entire or had been severed, which was not specifically raised by the answer at all, and the verdict was for the plaintiffs. I think there was no error in this disposition of the case by the trial court; that the finding of the jury is conclusive upon this appeal, and that the judgment should be affirmed.

All concur, except PECKHAM, J., dissenting.

Judgment affirmed.