## BURGIE v. HICKS.

### (District Court, N. D. New York. March 10, 1913.)

1. SALES (§ 150*)—CONTRACT—BREACH—"NOW."

    Where a seller, in answer to the buyer's request for performance, replied, "I cannot now comply," followed by a statement that because of the buyer's prior request for delay in shipment of a part of the merchandise the seller was not obliged to further perform, the word "now" did not mean that the seller could not comply "at present" or "just now, at this particular time," but that he could not comply for the reason that the buyer did not order the goods shipped as, or when, he promised to do so, and that the seller was under no further obligation.

    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 350, 351, 354, 355, 356; Dec. Dig. § 150.*

    For other definitions, see Words and Phrases, vol. 5, pp. 4851–4853.]

2. SALES (§§ 62, 201*)—CONTRACT—CONSTRUCTION—SEVERABILITY.

    Where a contract provided for sale of 1,000 barrels of vinegar to be shipped as ordered in car load lots, to be paid for at a specified price, f. o. b. cars at Memphis, Tenn., within 30 days after receipt of the same, title did not pass until delivery of each car load at Memphis, and hence

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the contract was divisible and separable both as to shipments and payments.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 171–179, 529–541; Dec. Dig. §§ 62, 201.*]

**3.** SALES (§ 174*)—CONTRACT—BREACH—DELIVERY IN INSTALLMENTS.

Where a contract for the sale of vinegar was deliverable at the buyer's option in car load lots, payable 30 days after receipt of each car load, the buyer's failure to pay for a car load received December 9, 1910, was no excuse for the seller's breach of contract on December 17th following, by refusing to make further shipments; the buyer on such refusal being entitled to withhold further payment, using the price of the shipment delivered to offset his damages for breach of the contract or sue for such damages, leaving the seller to counterclaim for the amount due on such shipment.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 434; Dec. Dig. § 174.*]

**4.** SALES (§ 406*)—CONTRACT—BREACH—RIGHT TO SUE—CONDITION PRECEDENT—PARTIAL PERFORMANCE—PAYMENT.

Where a buyer sued for the seller's breach of contract in refusing to make further shipments, claiming that a sum due him for breach of the contract was in excess of the sum due the seller for shipments made and unpaid, payment for such shipments was not a condition precedent to the plaintiff's right to maintain the action.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1156–1158; Dec. Dig. § 406.*]

**5.** CONTRACTS (§ 176*)—QUESTIONS OF LAW OR FACT—CONSTRUCTION OF CONTRACT—CORRESPONDENCE.

Where, in an action for breach of the contract of sale, there was no dispute as to the facts, the construction of the contract and correspondence, and their legal effect, were for the court.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 767–770, 917, 956, 979, 1041, 1097, 1825; Dec. Dig. § 176.*]

**6.** TRIAL (§ 168*)—QUESTIONS OF LAW AND FACT—DIRECTION OF VERDICT.

It is the duty of a federal court to direct a verdict when the evidence is such that the court would set aside a contrary verdict as against the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 376–380; Dec. Dig. § 168.*]

**7.** SALES (§ 418*)—CONTRACT—BREACH—DAMAGES.

In an action for breach of a contract for the sale of vinegar made by the seller in New York and deliverable to the buyer at Memphis, Tenn., at a specified price per gallon, the buyer's measure of damages was the difference between the contract price and the market price at Memphis, Tenn., of the same kind and quality of vinegar, for the amount the seller failed to deliver, less the amount due for vinegar delivered under the contract and not paid for.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

**8.** SALES (§ 418*)—CONTRACT—SELLER'S BREACH—OBLIGATION OF BUYER.

On seller's breach of contract to deliver vinegar, the buyer was entitled to recover the difference between the contract price and the market value, without going into the market and actually purchase vinegar of the character and amount the seller refused to deliver; the buyer being entitled to the benefit of the contract and to recover for the breach thereof, without further act on his part.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At Law. Action by Jeff L. Burgie against Knowlton V. Hicks for breach of a contract of sale. On defendant's motion to set aside a verdict for plaintiff for $2,384.44. Denied.

Visscher, Whalen & Austin, of Albany, N. Y., for plaintiff

J. W. Atkinson, of Waterford, N. Y., for defendant.

RAY, District Judge. On or about July 14, 1910, the parties entered into a written contract by which the defendant, Knowlton V. Hicks, agreed to sell and deliver to the plaintiff, Jeff L. Burgie, f. o. b. cars at Memphis, Tenn., 1,000 barrels of apple cider vinegar, 52 grains strength, at $1.25 per gallon, and ship 600 barrels of same on or before December 1, 1910, and the balance, 400 barrels, at such time thereafter as plaintiff should order. Each delivery was to be paid for within 30 days after receipt of same less a discount if paid within 10 days. Prior to November 22, 1910, the defendant delivered 80 barrels of the vinegar contracted for, and same was paid for. November 22, 1910, the defendant shipped to plaintiff 75 barrels of such vinegar, and same was received December 9, 1910. This was not paid for. October 7, 1910, in acknowledging the receipt of vinegar and making remittance therefor, plaintiff wrote:

"It is going to be a little difficult for us to take out the 600 barrels by the first of December and, if you can will be glad to have you extend the time of the delivery of the 600 barrels. However if you cannot we will simply have to have the same shipped here and store it."

In reply, and on the 12th day of October, 1910, the defendant wrote:

"Yours of the 7th to hand and in reply will say that we are willing to extend the time for your taking the 600 bbls. if it will please you, will not forward the next car till after November 1st."

October 29th the plaintiff ordered another car of vinegar, and November 14th defendant wrote:

"Your letter of Oct. 29th and telegram of 12th recd., and we are sorry we cannot ship the car ordered at once, we received a lot of crude cider this past summer, that upon running the same upon our generators would not make a high grade vinegar we are now starting our new stock and just as soon as we can get the 5% goods will ship. In your letter of Oct. 7th you said you were in no hurry to take the vinegar so, we blended our high test with the vinegar that would not come up to the test, and before we realized the fact our 5% vinegar was all out, but just as soon as we can get it to going again will ship. As to an additional thousand bbls. the apple crop in this section was so short we cannot at this writing say what we can do, are scouring around and if we have any success will let you know, are very sorry but this is the condition."

November 22, 1910, as stated, 75 barrels were shipped, and defendant wrote:

"We ship you today a car of 75 bbls., of vinegar, it tests 48 grains. We have charged you the same price as for the 52 grain, because it *cost* us *more* than the other did, with the present price of apples, and cider, our vinegar at 45 grain is going to cost us *more* than we will get for it. Have shipped by the Southern States Dispatch."

November 28, 1910, the plaintiff wrote:

"We are in receipt of your invoice for car of vinegar shipped us on Nov. 22nd. We do not think that you should ask us to lose 4 gr. per gallon on

this shipment. Our contract is for 52 gr. vinegar, and that is what we expect you to deliver or make the price less accordingly if you should reduce the grainage. Please ship us another car at once. We are now out of vinegar due to your delay in shipping.

"Our relation have always been pleasant and we want them to continue so, but we have sold vinegar against our contract with you and must insist that you deliver us the vinegar as per our contract. Please advise us at once what we may expect in the matter."

December 2, 1910, the defendant wrote:

"Yours of 28th Nov. to hand, replying to same, will say that you *forget* a year ago, when you agreed to take 600 bbls. at 14¢ f. o. b. cars here, that you wrote us asking us to cancel the contract, and we, notwithstanding contract, made price 13¢, now this season you did not want the goods when we had them, but *now* when we can get 13¢ f. o. b. cars here, for 45 grain vinegar, you insist that we fill contract, we will now do as you did, ask you to cancel the contract, or if you do not want to do that what will you do for us to help us out, cider apples were scarce in this section, and we are very short on our stock, we are scouring the country for cider and if we do not succeed in getting the cider we cannot make the vinegar, hope to forward another car, within ten days."

December 10, 1910, the plaintiff wrote:

"The car of vinegar arrived and am sorry to say, it had been in a wreck, and a good many of the barrels had broken staves and considerable loss was sustained by reason of the leakage, however, we have made claim against the railroad company for damages and will not bother you with the matter.

. "As to our contract, will say, that we certainly expect you to fill it as it would be disastrous to us if we should fail to get the vinegar as per our contract. We well remember the contract for 600 barrels, also that we lost at least $2.00 per barrel, although you reduced the price 1ct. per gallon, which was very good of you. Notwithstanding this reduction we stood loser $1,-200.00 on this contract, we took our medicine without a murmur. We want to say that we, at all times, stand ready to return a favor shown us in a business way. We will agree to make the price on the remainder of this contract 13½ cts., f. o. b. Memphis instead of 12½ cts. Now we cannot see how you could reasonably ask any more of us, as we are allowing you more, in the way of prices, than you ever did us. We are running short on vinegar and will ask that you ship us two or three cars at once on our contract. We certainly rely upon you and as fair business men we expect you to fill this contract."

The car of vinegar referred to was the 75 barrels. December 17, 1910, the defendant wrote:

"Your favor of the 10th to hand, we are sorry to hear that the car of vinegar shipped you last month was in wreck, but the R. R. must make good, as you have their receipt for it in good order.

"Now in regard to shipping you another car, it will be impossible, for the cider we have bought is at the mills where purchased, and since Dec. 1 we have had zero weather, and cannot move any of it, we are very sorry but cannot help it."

December 21, 1910, the plaintiff wrote:

"We are in receipt of your letter of Dec. 17th, and the contents are surprising to us.

"We regret to have to say that after reading and considering all of your correspondence with us, we have come to the conclusion that you are expecting or trying to get out of filling your contract with us for vinegar. We beg to advise you that we do not intend to release you from this contract, as we have contracted to sell vinegar based upon your contract with us and if

we should not get this vinegar from you it would damage us very much. We expect you to ship us a car of vinegar at once, and if you fail to do so we will place your contract in the hands of our attorney to see if there is any justice in the courts of· equity in this country. Excuses, will certainly not release ·you from your contract and we want to say, that your excuse of zero weather, does not sound like business to· us. Probably if this contract price were 2 cents over the market price, the zero weather would not have such an effect upon the factory.

"Now, gentlemen, we regret very much to break up several years of pleasant relations by such unpleasantness, but we must and do insist upon your filling your contract with us. You are the architects of this contract and justice and fairness alone should cause you to fill the contract without litigation.

"Wire us, at once, when you will ship car. If we do 'not hear from you at once we will order car from some other manufacturer and charge your account with the difference in what we have to pay and your contract price.

"Now' gentlemen, there is no use trying to dodge the business, for if you are going to ship us vinegar do so at once and if you are not simply say so and we will then clear the decks and see who is who and what is right and equitable.

"Trusting that you will reconsider and go ahead and ship us our ·vinegar and thereby continue our pleasant business relations, we beg to remain,

"Yours truly."

## December 30, 1910, the defendant telegraphed:

"Letter received. See ours of this date."

## January 5, 1911, the defendant wrote:

"Your letter of the 21st ult. at hand. It does not contain the usual happy greetings customary at this time of the year, but on the contrary is loaded with threats of dire consequences to us if we do not wire you at once when we will ship a car of vinegar.

"We are unable to ship you any more vinegar at this time for the reasons given in our previous letter. When we had the vinegar to ship you, you neglected to order it pursuant to the terms of the contract, and now when it is impossible to ship, you give us the alternative of shipments or a lawsuit.

"We will not consent to your charging our account with the difference in what you have to pay and our contract price."

## January 9, 1911, the plaintiff wrote:

"We are in receipt of your favor of the 5th instant. Contents carefully noted. Contents of same are not surprising to us.

"We have placed the contract and correspondence in the hands of our attorney and you evidently will hear from them in due course of time."

## January 14, 1911, the plaintiff's attorney wrote to the defendant:

"The Burgie Vinegar Company of this city, have turned over to this office a claim against you, growing out of your contract of the 14th day of July, 1910.

"As we understand it, only a very small part of the goods called for under this contract has been delivered by you, and .that the Burgie Vinegar Company is now entitled to something like 850 barrels of vinegar on this contract.

"My client is exceeding anxious to have you keep and perform this contract. They are very anxious to have you ship the remainder of this vinegar at once, at least as much as you can, and the rest of it as early as possible.

"The contract is simple, and under which you agreed to furnish the Burgie Vinegar Company 1,000 barrels of vinegar 52 grain at 12½ cents per gallon, f. o. b. cars at Memphis, and we are simply calling upon you to perform this contract. We are ready, willing and anxious to accept the goods and

pay for them according to contract price. If you cannot furnish all the goods just now, forward what you have and let us have the rest as early as possible.

"I sincerely hope that we can avoid any trouble about the matter, and can see no reason why there should be any. It is simply a matter of contract, and my client is ready, willing and ready to comply with the contract, and we know of no reason why you should not do the same.

"Let me know what you will do. If you do not purpose to fill the remainder of this contract I sincerely hope that you will say so.

"The Burgie Vinegar Company has contracted to sell goods on the faith of this contract with you and they need these goods in order to keep their contract. You will see, therefore, that it is of the utmost importance that the company know immediately your disposition and intention. If you do not mean to further comply with the provisions of the contract the Burgie Vinegar Company should know it."

In reply the attorney for the defendant wrote the plaintiff's attorney as follows:

"Waterford, N. Y., January 27, 1911.

"R. E. Maiden, Esq., Attorney at Law, Memphis, Tenn.—Dear Sir: Your letter of the 14th inst., to William Hicks & Son, of this village was handed to me some days ago for an answer.

"Under the contract you refer to, the Burgie Company was to order 600 barrels of vinegar on or before the 1st day of December, 1910. This it neglected to do, and Hicks & Son cannot now comply with their request as they have not the vinegar for shipment.

"Very respectfully yours, J. W. Atkinson."

The plaintiff testified that when he wrote for an extension of delivery of the 600 barrels he had in mind 60 or 90 days. This is not of much importance, as this was not expressed or communicated to the defendant and no particular length of extension was agreed upon. A reasonable time would be implied, and a reasonable time in which to make shipments in view of this modification of the original agreement. However, there was no modification as to the remaining 400 barrels. This action was not brought until after March 1, 1911. It is evident from the Atkinson letter of January 27, 1911, that the defendant did not intend to ship any more of the vinegar, and this intention not to perform the contract is fully evidenced by the subsequent conduct of Hicks, who failed thereafter to ship any vinegar or to offer any excuse for his failure. In fact, his attorney placed himself on the proposition that as Burgie had agreed to order the 600 barrels on or before December 1, 1910, and had failed to do so, he had broken the contract, and that Hicks was not under obligations to ship any more vinegar. There is no reference to the extension; no excuse for not shipping unless it be that Hicks did not have the vinegar. He indicated no purpose to procure it. True the language is:

"Under the contract referred to, the Burgie Company was to order 600 barrels of vinegar on or before the 1st day of December, 1910. *This it neglected to do*, and Hicks & Son cannot *now* comply with their request as they have not the vinegar for shipment."

[1] It was the duty of Hicks to have the vinegar, and the word "now" must be given the meaning that Hicks & Son (the defendant) would not comply with the agreement for the reason the Burgie Com-

pany had not kept the contract by ordering the 600 barrels prior to December 1st. This is the plain import and meaning of the language and made certain by the subsequent failure to ship or offer to ship any vinegar. If it had been the purpose to say that Hicks could not ship at that time but would later on, such purpose should have been expressed in some way. The words "cannot now comply" might mean cannot comply at present, or just now, at this particular time; or the words might mean cannot comply for the reason you did not order as or when you promised and I am under no further obligation; that is, "Things being so, as the case stands, after what has been said and done," you not having ordered as you agreed, I cannot comply with your request and am not obligated to. See Century Dictionary, "now." Taking the correspondence as a whole and the subsequent nonaction of Hicks, the meaning is perfectly plain. Was there a breach of the contract by Hicks December 17, 1910? Clearly we find nothing in the correspondence or evidence to suggest a modification of the agreement' as to delivery whereby zero weather excused shipments of the 400 barrels, or 600 barrels for that matter, on request or demand. The contract called for delivery of 600 barrels on or before December 1, 1910, "the balance or remainder of said 1,000 barrels of said vinegar to be shipped thereafter as ordered."

[2] The letter of December 17, 1910, and the subsequent correspondence and acts of the parties, show clearly a breach of contract on that date, December 17, 1910. Clearly the vinegar was to be delivered by defendant at Memphis, Tenn. The contract says the Burgie Company is "to pay therefor the sum of 12½ cents per gallon f. o. b. cars at Memphis, Tennessee." Also, "And the said party of the second part agrees to pay and remit to the party of the first part for each shipment of said vinegar within thirty days *after the receipt* of the same, one per cent. off ten days." It was purchased to be paid for in 30 days after delivery free on board the cars at Memphis. It was not to be paid for until received at Memphis, and we can hardly understand that it was intended to pass title at Waterford when put on the cars there, payment deferred until it reached Memphis. Payment for the shipment of 75 barrels was not due until January 5, 1911, 30 days after its receipt at Memphis, December 5, 1910. The contract reads:

"This agreement, made this 14th day of July, A. D. 1910, between William Hicks & Son, of the village of Waterford, in the county of Saratoga and state of New York, party of the first part, and Burgie Vinegar Company (Inc.), of the city of Memphis, in the state of Tennessee, party of the second part, witnesseth: That the said party of the first part has agreed to sell, and hereby does agree to sell, and the party of the second part has agreed to buy, and hereby does agree to buy from the said party of the first part one thousand (1,000) barrels of apple vinegar, 52 grain strength, and to pay therefor the sum of twelve and a half cents per gallon, f. o. b. cars at Memphis, Tennessee.

"And the said party of the first part agrees to ship six hundred barrels of said vinegar on or before the first day of December, 1910, the balance or remainder of said one thousand barrels of said vinegar to be shipped thereafter at such time or times as ordered by the party of the second part.

"And the said party of the second part agrees to pay and remit to the

party of the first part for each shipment of said vinegar within thirty days after the receipt of the same, one per cent. off ten days.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

"Wm. Hicks & Son. [L. S.]
"Burgie Vinegar Co., by E. C. Walker. [L. S.]"

This is not a contract where prices are to be fixed at Memphis, but one where there was to be no payment at all; the prices having been fixed, except the vinegar was delivered with freight paid at Memphis. The vinegar was to be shipped in car load lots, and each shipment paid for 30 days after its receipt, and hence the contract was divisible. See Clark v. West, 137 App. Div. 23, 28, 29, 122 N. Y. Supp. 380; Ming et al. v. Corbin, 142 N. Y. 334, 37 N. E. 105. By agreement of the parties deliveries were several and separable as were the payments. The promise of the purchaser to pay was not conditional upon entire performance by the vendor, but the price to be paid was apportioned to each delivery. By express terms delivery was to be made in car load lots and each lot paid for within 30 days thereafter.

[3] The contention of the defendant cannot be maintained that plaintiff first broke the contract by not paying for the 75 barrels of vinegar shipped November 22d, and received on December 9th, as payment therefor was not due until January 9, 1911, and December 17, 1910, the defendant violated the contract by neglecting and refusing to ship as directed, and the defendant thereafter did not suggest or intimate any purpose to ship or make shipments conditional on payment for the car load delivered December 9th. The plaintiff thereafter had the right to withhold payment for that car load until defendant showed a willingness to perform at least. Being first in default himself in not delivering according to the contract, the defendant cannot excuse such default by saying that plaintiff did not subsequently pay for a car load of the vinegar, payment for which fell due after such default, although delivered prior to such default. When Hicks made default in shipping, the plaintiff had the right to withhold further payment, stand suit for the price, offsetting his damages, or sue for his damages, leaving Hicks to counterclaim the sum due. Thomson v. Poor, 147 N. Y. 402, 409, 410, 42 N. E. 13, relied on by defendant, has no application here. The plaintiff bases no claim on any default in making shipments prior to December 1, 1910.

Thomson v. Poor, supra, holds that where one entitled to performance of an act at a certain time consents to a postponement of performance of the act, and the other has acted on such consent and permitted the contract time to pass, the one entitled to performance is estopped from subsequently recalling such consent and waives his right to treat the nonperformance within the original time fixed by the contract as a breach of the contract. The justice of this rule no fair-minded person will question. It is conceded that there was a modification as to the delivery of the balance of the 600 barrels to the extent that same were not to be delivered on or before December 1, 1910. There was no consent that defendant should not deliver the 400 barrels when called for, or the balance of the 600 barrels *after* December 1, 1910, on demand, at least within a reasonable time thereafter.

The defendant insists that the plaintiff cannot recover here, or maintain this action, for the reason that March 30, 1911, when this action was commenced, he was in default for nonpayment of the sum due for the 75 barrels of vinegar delivered December 9, 1910, and due January 9, 1911, notwithstanding the default of the defendant December 17, 1910, in refusing to deliver vinegar pursuant to the contract. This is equivalent to saying that if A. agrees to sell and deliver to B. at a specified price per barrel 100 barrels of vinegar, same to be delivered in two lots of 50 barrels each, at different dates 30 days apart, and each lot is to be paid for 60 days after delivery, and A. delivers the first lot but refuses to deliver the second lot, B. cannot maintain an action for his damages for the nondelivery until he pays for the lot delivered and which payment was not due or payable when A. breached the contract. I do not so understand the law. Lennon v. Smith, 124 N. Y. 578, 27 N. E. 243, relied on by the defendant here, is an authority against him. There plaintiff breached the contract to do certain work by a specified time. The contract fixed damages for each day's delay. The plaintiff sued for the work done, and defendant alleged and proved nonperformance and counterclaimed for damages. The referee found nonperformance by plaintiff in part and refused to allow plaintiff for the value of the work performed and gave defendant full damages for the breach by plaintiff. The court said:

"But having determined that the defendant was entitled to relief from the obligation of her contract by the breach of it by the plaintiff, and having for that reason wholly relieved her from it accordingly, it is difficult to see how the referee could properly have awarded damages in her favor against the plaintiff for the nonperformance of the contract. She could not repudiate the contract for the purpose of barring the plaintiff's claim for his work, and at the same time make it effectual for the recovery of damages against him for its breach, although she might, if the facts permitted, recover damages, if any there were, in excess of the price or value of the plaintiff's work. And the reason is that in such case the contract is permitted to remain operative for the purpose of the remedy and relief of both parties to it, and it is no less essential to support the defendant's claim for damages than it is to sustain that of the plaintiff founded upon it for his work. It is apparent that a rule having the effect to give one of the parties to a contract the benefit of it to the exclusion of the other in the same action would or might work very unjustly to the latter and quite unreasonably to the profit of the former. Walker v. Millard, 29 N. Y. 375; Woodward v. Fuller, 80 N. Y. 312. In the present case the conclusion was warranted by the evidence that the work performed by the defendant at the contract prices amounted to more than the damages recovered by the defendant. The effect of the recovery directed by the referee was to give the defendant the benefit, such as it was, of all the work performed by the plaintiff, and, in addition, the damages awarded to her against him. This was justified by no sound principle of law. The conclusion of law was based upon the fact found that the work which the plaintiff undertook by the contract to do was not substantially performed by him, not that his work was of no value to the defendant."

That is, when one party partially performs a contract and sues on same, nonperformance proved will defeat recovery, but will not both defeat recovery for the part performed and justify a recovery of damages by the other for the breach. The defendant in such case may say the contract was broken and terminated and affords no ground of ac-

tion, or he may treat it as in force or operation to allow him to counterclaim and recover his damages, and, in such case, he may allege and prove his damages, and, if they exceed the value of the work done or goods delivered by plaintiff under the contract, may have judgment for the excess; the one being offset against the other. But if he elects to treat the contract as in force and claims damages for its breach, and the amount earned by the plaintiff exceeds such damages, then plaintiff will have judgment for such excess. As said by the court:

"And the reason is that in such case the contract is permitted to remain operative for the purpose of the remedy and relief of both parties to it, and it is no less essential to support the defendant's claim for damages than it is to sustain that of the plaintiff founded upon it for his work."

[4] So here the plaintiff sues *on the contract* (treats it as in force) to recover his damages for the breach thereof by defendant, not denying that something is due the defendant according to its terms, but claiming that the sum due him for the breach is in excess of the sum due defendant for his partial performance. In such case as this the contract is permitted to remain operative for the purpose of the remedy and relief and relief of both parties to it, and hence payment of the sum claimed or due for partial performance by defendant is not essential to the maintenance of the action. The plaintiff sues to recover damages for the breach by defendant. Defendant might have proved, if he could, that plaintiff *first* broke the contract and so exonerated him from further performance. This he failed to do, and, having pleaded his counterclaim for the amount earned under the contract, on the trial was allowed full compensation therefor; but the plaintiff's damages exceed the amount earned and due the defendant, and hence he had judgment. *After* defendant broke the contract, plaintiff was under no obligation to perform its terms as a condition of suing to recover his damages. Payment for the 75 barrels delivered December 9, 1910, due January 9, 1911, was not a condition precedent to compliance with the demands of December 10, 1910, and December 21, 1910, made and refused.

"When the performance of acts by one party are to precede performance by the other, he may be sued for nonperformance, though the other party has not offered to perform." Williams v. Healey, 3 Denio (N. Y.) 363.

"Where performance by defendant is to take place before performance by the plaintiff, the plaintiff may sue without having performed." Supervisors of Schenectady v. McQueen, 15 Hun (N. Y.) 551.

[5] There was no dispute as to the facts, and the construction of the contract and correspondence and their legal effect were for the court, not the jury. Smith v. Dottereweich, 132 App. Div. 489, 494, 116 N. Y. Supp. 896.

[6] In the United States court it is the duty of the court to direct a verdict when the evidence is such that the court would set aside a verdict the other way, if rendered, as against the evidence.

[7] As to the damages it is clear that the plaintiff was entitled to recover the difference between the contract price and the market price at Memphis, Tenn., of the same kind and quality of vinegar, less the

amount due for the 75 barrels with interest added. Joyce on Damages, § 1621, p. 1676, and numerous cases there cited; Todd v. Gamble, 148 N. Y. 382, 42 N. E. 982, 52 L. R. A. 225; Saxe v. Penokee Lumber Co., 159 N. Y. 371, 54 N. E. 14. In this Saxe Case the court held:

"1. Contract of Sale—Breach by Vendor—Measure of Damages. The general rule for the measure of damages, where the vendee sues the vendor for the breach of a contract of sale of merchandise at a fixed price, is the difference between the contract price and the market value at the time and place of delivery; and, when the vendee can go into the market and buy the article which the vendor has failed to deliver, this is the only rule.

"2. Rule as to Duty of Party Injured by Breach of Contract, to Mitigate Damages. The rule, that the party who suffers from a breach of contract must so act as to make his damages as small as he reasonably can, is without practical application to a case where the subject-matter of the contract has a market value at the time and place of delivery."

[8] The court adopted the figures most favorable to the defendant. It was not necessary for the plaintiff to go into the market and actually purchase the vinegar before bringing suit. He was entitled to the benefit of his contract and damages for the breach thereof, even if he had gone out of business before the time for bringing suit arrived or before he wanted the vinegar in his business. Saxe v. Penokee Lumber Co., 159 N. Y. 371, 54 N. E. 14. There the court held:

"The law does not require the vendee to go into the market and buy, in order to secure the damages actually sustained by him through a breach on the part of the vendor of the contract for the sale of an article having a market value."

I do not see how the defendant can complain that the damages given are excessive. The proof showed the market value of 52 grain vinegar at Memphis to be 20 cents per gallon, but the court limited the plaintiff to 19 cents per gallon as stated in his bill of particulars. The plaintiff purchased 3,749 gallons of 50 grain vinegar of American Fruit Products Company at 15¾ cents per gallon delivered in New York, and the freight paid to Memphis increased the cost to 19.48 cents per gallon. Later the plaintiff purchased 3,245 gallons at a cost of 15¾ cents in New York and with freight added it cost him 19.29 cents per gallon in Memphis, Tenn. So far as plaintiff did purchase vinegar (so far as the proof shows), it cost him more at Memphis than he was allowed by the court in directing a verdict. If the place of delivery was Waterford, N. Y., the plaintiff can recover only 3¾ cents per gallon instead of 6½ cents allowed as damages, or $1,457.63, to which shall be added interest, and from this should be deducted $372.03. But I cannot doubt that the place of delivery was Memphis, Tenn. And it is clear from the proofs that the zero weather did not prevent delivery, as defendant testified he sold some vinegar in December, 1910, and some in January, 1911. However this may be, as he had agreed to deliver *after* December 1, 1910, as demanded, up to 400 barrels, he should have been and was obligated to be ready to deliver on demand. I think zero weather at Waterford, N. Y., in December, January, and February may reasonably be anticipated.

I am unable to see how the court could have done otherwise than direct a verdict as it did, and the motion to set aside the verdict directed and grant a new trial must be denied.