## LAYMAN v. JOHN ANDERSON & CO.

(Supreme Court, Appellate Division, First Department.   April 24, 1896.)

EVIDENCE—WEIGHT AND SUFFICIENCY.

Defendant set up as a defense the existence and performance of a certain parol agreement by plaintiff, not referred to in a written contract sued on, to turn over to defendant corporation $15,000 of its stock. Its evidence of such agreement was largely by six witnesses interested in the event of the suit. Plaintiff contradicted them, and denied that an indorsement of the certificates made by him was a transfer to it of the stock under the parol agreement. Letters written by plaintiff, tending to corroborate defendant's theory, were put in evidence. *Held*, that whether plaintiff was entitled to recover was a question for the jury, and it was error to set aside a verdict for him, though the court was dissatisfied with it.

Appeal from circuit court, New York county.

Action by John Martin Layman against John Anderson & Co. (a corporation) to recover $15,000 alleged to be due plaintiff as the balance of the purchase price of his business, etc., sold and conveyed to defendant, in which there was a verdict for plaintiff. From an order setting aside the verdict, plaintiff appeals. Reversed.

The action was brought upon a contract made February 8, 1890, by and between the plaintiff and defendant herein and one John C. Anderson, wherein it was agreed, so far as it is material here to refer to it, that the plaintiff, in consideration of $35,000, to be paid him in the capital stock of defendant at par, and mutual agreements therein expressed, sold and transferred to the defendant the business, good will, trade-marks, rights, and privileges conveyed to plaintiff by Anderson by indentures of April 15, 1882 (the business being the manufacture of chewing and other tobacco, and which was carried on prior to April 15, 1882, by Anderson, and subsequent thereto by plaintiff), and all the stock, materials, and supplies on hand, and the defendant agreed to pay plaintiff therefor $35,000, in capital stock at par, and Anderson, in consideration of $11,000, to be paid him by the plaintiff in such capital stock, assented to the sale and transfer by the plaintiff to the defendant of the rights and property conveyed by the indenture of April 15, 1882, free and clear from all claims on Anderson's part thereon; and wherein it was further agreed that plaintiff should not engage in any similar business thereafter, but should give all his influence to the interests and success of defendant; that he would pay all the debts and liabilities of the business then existing, and the defendant might retain, unissued, an amount of such capital stock equal, at par value, to double the amount of the debts, etc., then outstanding. The defendant, under this agreement, at once took pos-

session of the property so sold and transferred, and has ever since retained the same. The defendant, at the time the agreement was made and the property delivered, made out and executed in due form certificates in plaintiff's name for 350 shares of its stock, of the par value of $35,000; and plaintiff indorsed the certificates for the purpose of the transfer of the same, and left them with the defendant. Defendant has paid plaintiff, on account of 200 shares thereof, the sum of $20,000, and has retained the remaining 150 shares, but has paid him nothing therefor. There was no dispute as to these facts. The defense alleged on the part of the defendant was that the full amount ($35,000) of stock was issued to plaintiff, and that $15,000 of it was turned over by plaintiff to the defendant under an agreement, made at the time the defendant was formed, between the plaintiff and the other parties interested in the defendant, that this amount of capital stock should be turned over by the plaintiff to the defendant, to be used for the defendant's benefit. The whole controversy on the trial was over the question as to whether this agreement alleged was made, and the $15,000 of stock was turned over to the defendant pursuant to the agreement. The plaintiff testified that no such agreement was made, and no such disposition of the $15,000 of stock was made. Six witnesses were sworn on the part of the defendant in support of its alleged defense, and whose evidence bore more or less distinctly upon this question of fact; and documents and letters were also put in evidence, on the one side and the other, bearing upon the question. At the close of the plaintiff's evidence, and again at the close of all the evidence, a motion was made by defendant to take the case from the jury and direct a verdict for the defendant. The court held that the case was one for the jury, and it was accordingly summed up by counsel, and submitted by the court to the jury, and a verdict was rendered for the plaintiff for the $15,000. A motion was made by defendant, upon the minutes, to set aside the verdict, and for a new trial, upon the exceptions taken at the trial, and because the verdict was contrary to the evidence and the law, and for excessive damages. This motion was granted, and from the order so made this appeal is taken.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Edward C. James and Abram I. Elkus, for appellant.
John M. Scribner, for respondent.

WILLIAMS, J. The real ground upon which the verdict was set aside was that it was unsupported by the evidence. The learned trial judge evidently regarded the verdict as an improper one to be rendered upon the evidence in the case. He refused to hear any argument upon the motion, but granted it as soon as it was made; remarking that he regarded the verdict as a present or gift to the plaintiff of $15,000, to which he had not a shadow of right, and he desired to place on record his disapproval of the verdict. He heard all the evidence, and seems to have had, at the close of the case, very decided views as to what the verdict should have been. We have examined the record and the evidence, and may have formed our judgment as to what the verdict should have been; but it must be remembered that, if the case was one for the jury, the verdict was not to be the verdict of the trial court or of this court, but of the jury, and the question is not whether the trial court was, or this court is, satisfied with the verdict, but whether it is a case in which the parties had a right to the judgment of 12 men as to the facts. If the verdict of a jury may be set aside in any case where the court is not satisfied with it, if the court must be satisfied as well

as the jury, then the court may as well dispense with the jury alto-
gether, and make the decision itself. The jury is entirely useless
and unnecessary. This is not, of course, the rule. When the case
is one that should properly be submitted to the jury, its verdict must
stand, whether it is satisfactory to the court or not. The parties
have a right to try before a jury, and to have its judgment as to the
facts, and they cannot be deprived of such right. It is only where
the evidence is uncontradicted, or is so preponderating in one di-
rection that a verdict to the contrary would indicate that the jury
were actuated by favor, prejudice, or passion, that the court is justi-
fied in taking the case from the jury and determining the facts
itself. When there is a fair conflict in the evidence; where there
are witnesses on either side whose credibility is to be determined
(especially where the witnesses are parties to or interested in the
action); where there are documents, papers, and letters, and cir-
cumstances sworn to by witnesses, the effect of which is to be de-
termined, and the inferences from which are to be drawn,—the
questions of fact must be determined by the jury, and not by the
court. These principles of law are so well settled that no citation
of authority therefor is necessary. We have only to apply them to
the evidence in this case.

The defendant, by its answer and on the trial, admitted substan-
tially all the facts alleged by the plaintiff as a basis for a recovery
of the $15,000; and his recovery could only be defeated by proving
the parol contract to turn over the $15,000 of stock to the defend-
ant after it had been issued to the plaintiff, and the performance of
that contract by turning over the stock. The defendant had the
burden of proof upon these questions. In the absence of any proof
with reference to these questions, the plaintiff, upon the other con-
ceded facts, would have been entitled to a verdict, which the court
might well have ordered. The defendant gave its proof as to the
parol agreement largely by witnesses who were interested in the
event of the action, as plaintiff, who contradicted them, was also
interested. The question of the credibility of all these witnesses
was for the jury, and not for the court. The only agreement in writ-
ing between the parties was the one upon which plaintiff based his
right of action. This was under seal, and it made no reference to
any such agreement as alleged by defendant. It is said by the de-
fendant that the contract was carried out by the issue of the cer-
tificates for 150 shares of stock, as well as the 200 shares, and the
indorsement of the whole by plaintiff. That he did indorse the
whole is conceded, but that the transaction was an issue to and
transfer by him of the stock, under the parol agreement alleged, he
denies. It will be observed the written agreement provided that
the defendant should retain some unissued stock until certain debts,
etc., were paid by the plaintiff. The retaining of the certificates for
the 150 shares of stock after they were so indorsed by the plaintiff
was not, therefore, inconsistent with the plaintiff's theory of the
transaction. The defendant claims that the real consideration of
the transfer of the property by the plaintiff was $20,000. The plain-

tiff claims the consideration was truly stated in the contract in writing and under seal, and it is certain that the law only permitted stock to be issued in payment for property purchased at its real value.   Letters written by plaintiff were put in evidence, tending to corroborate defendant's theory of the case, and were proper for the consideration of the jury.   The effect of all the evidence in the determination of the controverted questions of fact, we think, was for the jury, and not for the court.   We do not desire to consider or discuss the evidence in detail.   It is sufficient for us to say that in our opinion there was such a conflict in the evidence that the court could not assume to determine the facts, but must leave them to be determined by the jury, and the verdict of the jury should not be disturbed by the court.   Upon an examination of all the evidence, we may say that we would have been better satisfied, had the verdict been the other way.   The balance of probabilities impresses us as inclining in favor of its claim.   But the final preponderance in its favor upon all the evidence is not so great as to bring the case within the rule which permits a verdict to be set aside only when it is reached through partiality, passion, or prejudice.

We conclude, therefore, that the order setting aside the verdict was erroneous, and it should be reversed, with costs.   All concur.