MORE v. KNOX.

(Supreme Court, Appellate Division, Fourth Department. May 22, 1900.)

SALE—BREACH OF CONTRACT—MEASURE OF DAMAGES.

The measure of damages for breach of a contract of sale of hats of a certain brand to a dealer, which could not be purchased by him elsewhere except at retail, was the profit he would have made on a sale of all the hats, less what he would have lost by having to carry some of the hats over to the next season, when they would be of less value, the probable loss by bad accounts, and demands for that brand which were supplied by some other.

McLennan and Williams, JJ.. dissenting.

Appeal from trial term, Erie county.

Action by George E. More against Edward M. Knox. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Adelbert Moot, for appellant.
Adolph Rebadow, for respondent.

SPRING, J. The defendant was the manufacturer of a certain style of hats known as the "Knox," and for 16 years the plaintiff had been his exclusive representative in the city of Buffalo. Their course of dealing had been for the plaintiff to order in the fall or winter of each year such hats as he desired for the forthcoming season, and whatever were required for immediate use were shipped promptly, while the bulk of the order was filled at later dates. On the 22d of September, 1896, one Steinmetz, who was taking orders for the Knox hats, obtained from plaintiff an order for 61½ dozen of this brand. Three and one-half dozen were for immediate delivery, but the principal part of the purchase was to be delivered in February and March by separate shipments. The order was received by the defendant, and the 3½ dozen delivered at once, and paid for by the plaintiff. On November 2d following, Steinmetz again took three orders of plaintiff for 38 dozen of the Knox hats, 3 dozen of which were for immediate shipment, but the balance were reserved for delivery in April. This order was received by the defendant, and the goods ordered for prompt shipment were de-

livered and paid for. In December of that year the defendant revoked the authority of the plaintiff to act as his agent; but the plaintiff testified that in December of that year or in January following, he received a postal card from the defendant inquiring what leathers he desired placed in the hats, and the defendant replied, giving the information sought. Upon this testimony, with other, the trial court submitted to the jury the question whether there was an acceptance of these orders by the defendant, and the verdict determined that proposition in favor of the plaintiff. While the defendant could terminate plaintiff's agency at will, that did not authorize him to refuse to perform his contract. The force of his acceptance of these orders, especially when conjoined with their partial delivery, was an agreement on his part to deliver the hats in compliance with the orders made by Steinmetz, and which were accepted and ratified by him. This proposition, and others pertaining to the liability of the defendant, are exhaustively discussed in the dissenting opinion of Mr. Justice McLENNAN, and further reference to them here is unnecessary. The serious difficulty in the case arises over the question of damages. The trial judge recited briefly, but very fairly, the voluminous testimony pertaining to the subject, and then made the following statement of the law:

"This is all the evidence, as I recall, gentlemen, given upon the subject of damages. You will take into account, in determining this question, what the profit to Mr. More would have been had he sold all the hats, and in connection with that you will take into account the probabilities as to how many of the hats he could sell, and how many would have to be carried over beyond the season, when, according to the whole testimony in the case, they would be worth less. You are to take into account the probabilities as to his losing some accounts. You will take into account also as to whether his demand for Knox hats was supplied by any other brand of hats,—whether Miller, or some of the other brands he had on sale. All these things are to be taken into account, and then you will determine from all this testimony, as reasonable men, what damage he has suffered by reason of the breach of this contract, should you find that a contract existed. I do not know that I can add anything which will make clearer to you the rules which will govern you in the disposition of this case. If, under the rules of law which I have laid down, you find that there was no contract between Mr. More and Mr. Knox for the goods undelivered, then your verdict should be, 'No cause of action.' If you find under those rules, however, after a fair consideration of the evidence, that there was a contract for these goods which were not delivered, then you will find a verdict for the plaintiff for such damages as you believe he is reasonably entitled to under the rules governing damages which I have called to your attention."

The counsel for the defendant, at the close of the charge, made the following request:

"I ask your honor to charge the jury that, even were a contract made out, still plaintiff must prove by a fair preponderance of evidence that he has sustained damages; and, if the jury believe all there is to it is there is a possibility he might have been damaged, but the probability is he sold Miller hats and other hats to his customers in place of Knox hats, so that his sales in fact were not cut down, he was not damaged, that then plaintiff can only recover nominal damages."

The court complied with this request. There was no exception to the rule of damages adopted by the court, and every proposition enunciated had evidence to support it. The defendant was evidently satisfied with the instruction given, and, unless the jury exceeded what the

evidence warranted, it is not the province of this court to interfere with the verdict. The general rule of damages for breach of contract of sale undoubtedly is that the vendee is entitled to recover the difference between the contract price and the market value at the time and place of delivery. Saxe v. Lumber Co., 159 N. Y. 371, 54 N. E. 14; Todd v. Gamble, 148 N. Y. 382, 42 N. E. 982. This measure is supposed to afford adequate indemnity to the party damaged, and still be just to the party responsible for the injury. In this case the court was not requested to make the rule referred to the sole measure by which the parties' rights were to be determined. The parties apparently assented to the more relaxed rules submitted for the guidance of the jury, and they ought not to be heard to complain now. It is true that it is incumbent upon the buyer, where the article has a market value at the time and place of delivery, to lessen the damages he has sustained by the breach by endeavoring to replace what the vendor has failed to deliver to him. See cases last cited. The plaintiff could not purchase any Knox hats in Buffalo,—at least at wholesale. The sole agency for their sale had been transferred to another dealer,—a fact generally known to local purchasers. Had he attempted to buy of Georger he must pay the retail price. That made the market value for him if he endeavored to replace the goods which the defendant had declined to furnish him. There was, therefore, no infringement upon the general rule stated for the ascertainment of damages. The plaintiff did handle other first-class hats, notably the Miller hat, which he testified was equally as good as the Knox hat. The fact that he continued to sell other hats as valuable as the Knox did not prevent him from recovering what he would have gained by the performance of the agreement by the defendant. The Knox hat is of a high grade, and many men wear no other. Plaintiff might have sold as many Miller hats as he would have formerly sold of those furnished him by the defendant, and still suffered measurably by the omission of the defendant to fulfill the contract of sale. He lost customers who preferred the Knox hats. The plaintiff stipulated in writing that he would not sell any of the "first-quality silk hats containing the Knox die for less than eight dollars each, nor any first-quality stiff hats containing the Knox die for less than five dollars each." The profit, therefore, of those sales during the season could be arrived at with reasonable accuracy. The cost of the undelivered hats in both purchases aggregates $2,694, and, had those been delivered, and all sold in the season, the plaintiff might have realized as profits $2,043, and the jury measured his damages at $1,317.74. In 1896 plaintiff's sales of the Knox hats amounted to $6,183.51, and the quantity of hats left over each year was given approximately, so that the jury had all the facts before them to ascertain the extent of the damages sustained by the plaintiff. The point pressed so strenuously that plaintiff's sales did not diminish by reason of the fact that he was not selling the Knox hat may not have been a very potential circumstance against him. Georger, another dealer in Buffalo, was given the exclusive sale of these hats. He testified that "in 1897 that hat had a good demand in the city of Buffalo, and it has had ever since." Plaintiff might have sold all the Knox hats he had ordered of defendant, and still kept up the sale of the Miller and Heath

hats.   The hats of this brand which Georger sold, it is fair to assume, plaintiff could have sold.   The plaintiff might have purchased a stock of dry goods, or boots and shoes, and his profits might have been greater by virtue of these additional lines than during the preceding year from the Knox hats, but that would not prevent him reaping the benefit of his agreement.   In view of the fact that plaintiff could not obtain the Knox hats in Buffalo except at the retail price, which was fixed and definite, it was entirely proper to prove all the facts.   The extent of the sales each year of these hats, the quantity ordinarily left unsold, the disposition made of them, the extent to which the damages were remedied by the sales of other brands, were distinct facts for the enlightenment of the jury.   With these facts before the jurors, it was for them to work out a fairly adequate compensation to the plaintiff for the loss he had sustained by the defendant's breach.   This course was adopted, and without criticism, when submitted to the jury.   The elements going to make up the sum total of the damages were not speculative, but fairly ascertainable, and the method followed is well sustained by the authorities.   Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. 264; Dickinson v. Hart, 142 N. Y. 183–188, 36 N. E. 801; Trust Co. v. O'Brien, 143 N. Y. 284, 38 N. E. 266; Crittenden v. Johnston, 7 App. Div. 258, 40 N. Y. Supp. 87.   The evidence sustains the conclusion reached by the jury.   We might submit the facts to a mathematical analysis, and determine that a less recovery would have been more satisfactory to us, but out of the series of facts presented the jury have fixed the measure of defendant's liability, and the verdict should stand.

As was said in the case of Layman v. Anderson & Co., 4 App. Div. 124, 38 N. Y. Supp. 883:

"We have examined the record and the evidence, and may have formed our judgment as to what the verdict should have been, but it must be remembered that, if the case was one for the jury, the verdict was not to be the verdict of the trial court, or of this court, but of the jury; and the question is not whether the trial court was, or this court is, satisfied with the verdict, but whether it is a case in which the parties had a right to the judgment of twelve men as to the facts.   If the verdict of a jury may be set aside in any case where the court is not satisfied with it,—if the court must be satisfied as well as the jury,—then the court may as well dispense with the jury altogether, and make the decision itself.   The jury is entirely useless and unnecessary.   This is not, of course, the rule.   When the case is one that should properly be submitted to the jury, its verdict must stand, whether its verdict is satisfactory to the court or not."

During the trial the counsel for the defendant objected to the reception of the testimony tending to show the value of these hats at retail in the city of Buffalo, on the ground that it was not competent, and that it was not the proper measure of damages.   The evidence was received, and an exception taken.   As already stated, the only possible way by which plaintiff could refill his orders, if at all, was by purchasing of Georger at retail.   That, therefore, constituted the market value of these particular hats if plaintiff expected to continue selling them.   It is patent, however, that plaintiff could not buy hats of this brand anywhere after Georger had succeeded him.   It was, therefore, competent to prove any fact or circumstance pertaining to their value in order to enable the jury to ascertain in the best possible manner

what the value of these hats was, and to adjust the damages which plaintiff had sustained. This proof did not establish the measure of damages, but it was a fact of more or less cogency, to be considered by the jury, and the learned trial judge so construed it in submitting it to them. No objection was made that this testimony was inadmissible under the complaint. Had that criticism been made, the difficulty could have been remedied by amendment, and it is too late now to be available to the appellant.

Judgment affirmed, with costs to the respondent.

ADAMS, P. J., and LAUGHLIN, J., concur.

McLENNAN, J. (dissenting). For several years prior to 1897 the plaintiff had the exclusive sale of hats manufactured by the defendant, known as "Knox" hats, in the city of Buffalo, N. Y., under an arrangement established by custom and by the course of dealing between the parties, by which the plaintiff was entitled to buy from the defendant such hats as he desired, at a price to be agreed upon at the time of each purchase, but upon the understanding that he would not sell the same during the "hat season," so called, for less than the regular retail price to be fixed by the defendant. At the close of each season the plaintiff was at liberty to sell any hats then on hand at such price as he might see fit. The defendant agreed, in substance, that he would sell hats of his manufacture to no other dealer than the plaintiff in the city of Buffalo during the continuance of such arrangement. Either party had the right to terminate the arrangement at will, but during the continuance thereof it was contemplated that each party should discharge the obligations imposed thereby in such manner as to promote and protect the interests of the other. There was an implied obligation upon the part of the plaintiff to use all reasonable and proper efforts to sell as many of the defendant's hats as he could, and not to in any manner influence customers desiring hats to purchase those manufactured by other parties, or to deter them from purchasing hats manufactured by the defendant. On the 19th day of May, 1895, the plaintiff signed a writing, which was, in part, declaratory of the arrangement so existing between the parties, in the following words:

"In consideration of securing the sole agency for the sale of the Knox hats at Buffalo, in the state of New York, [I] hereby agree not to sell or allow to be sold from our stock, or otherwise, any first-quality silk hats containing the Knox die for less than eight dollars each, nor any first-quality stiff hats containing the Knox die for less than five dollars each."

Thereafter, and on the 22d day of September, 1896, the plaintiff, through a Mr. Steinmetz, a traveling salesman for the defendant, ordered 60½ dozen hats, of which 3½ dozen were to be delivered at once, and the balance in February and March following. The order was sent by Mr. Steinmetz to the defendant, and very soon thereafter the 3½ dozen hats were delivered to and paid for by the plaintiff, according to the terms of the order. On the 21st day of November, 1896, the plaintiff, through Mr. Steinmetz, ordered 38 dozen additional hats, of which 3 dozen were to be delivered at once, and the remainder on the 1st day of April following. This order was also sent to the defendant

by Mr. Steinmetz, and soon thereafter the three dozen hats were delivered to the plaintiff, and were duly paid for by him. In the month of December, 1896, the defendant elected to and did terminate the plaintiff's right to act in the city of Buffalo as the exclusive vendor of hats manufactured by him, and thereupon declined to deliver the remaining 57 dozen hats ordered in September, and the remaining 35 dozen hats ordered in November, and so notified the plaintiff. The evidence tended to show, and the jury found, that the orders for the hats so undelivered had been accepted by the defendant, and that such orders and acceptance constituted a valid contract of purchase and sale between the parties. Evidence was also given which tended to show that the plaintiff, while acting as the sole vendor of the defendant's hats, was guilty of conduct in respect thereto which justified the defendant in terminating the arrangement or agreement which existed between them, and in refusing to deliver the balance of the hats ordered. That question, however, was not presented to the jury for its determination. Neither party requested that it be submitted, and it is therefore not presented for review upon this appeal. The theory of the plaintiff upon the trial and as alleged in his complaint was that the orders for hats given by him through Mr. Steinmetz, and their acceptance by the defendant, constituted a valid contract, and that the defendant became liable to the plaintiff for any damages sustained by reason of the defendant's failure to deliver the hats ordered. The contention of the defendant was that the orders for the hats to be delivered in February, March, and April were never accepted by the defendant, and that, therefore, he was under no obligation to deliver the same. That was the only question submitted to the jury, except the question of damages, and neither party asked to have any other question submitted or passed upon. The jury, by its verdict, found that the defendant accepted the orders, became obligated to deliver to the plaintiff all the hats called for thereby, and the evidence amply justifies such finding. The rulings of the learned trial justice in receiving and excluding evidence bearing upon the question of damages, and whether or not the verdict rendered was excessive, present the only questions for review upon this appeal. In the complaint no special damages are alleged or demanded. It is simply stated that at certain specified times the plaintiff ordered hats from the defendant, to be delivered at a future time named; that the defendant accepted such orders, neglected and refused to deliver the hats called for, and that by reason thereof the plaintiff sustained damages in an amount specified. Under these allegations the plaintiff introduced in evidence the orders, and thus proved the purchase price of the hats in question. For the purpose of proving the damages which he claimed to have sustained by reason of their nondelivery, the plaintiff was permitted to show, over the defendant's objection, the retail price of such hats in the city of Buffalo during the hat season of the year 1897, and it was insisted that the difference between these two sums—the aggregate amount of the purchase price and the aggregate amount of the retail price—was the measure of damages sustained by the plaintiff, and which he was entitled to recover. The plaintiff offered the evidence objected to upon that theory, and no other evidence was given which would form a

basis for a recovery. This class of evidence, and all of it, was objected to by the defendant, the objections were overruled, the evidence received, and exceptions duly taken. We think the evidence was improper and incompetent under the allegations of the complaint, and that its reception by the learned trial justice was error.

In the case of Parsons v. Sutton, 66 N. Y. 92, the correct rule, as we understand it, is stated in the headnote as follows:

"The measure of damages for breach of contract to sell and deliver an article of merchandise at a time and place specified, when the purchaser can go into the market and buy the article, is limited to the difference in value between the contract price and the market price at the time and place of delivery. If there is no market for, and the article cannot be had there with reasonable diligence, and the vendee has suffered special damages because of, and which are the proximate and only results of, the vendor's failure, such damages may be recovered. The special damages in such case must be alleged and set forth in the pleading of the party."

In Squier v. Gould, 14 Wend. 159, it was held:

"Where an action on the case is brought, and the damages actually sustained do not necessarily arise from the act complained of, and consequently are not implied by law, the plaintiff must state in his declaration the particular damage which he has sustained, or he will not be permitted to give evidence of it upon the trial."

See, also, Vanderslice v. Newton, 4 N. Y. 130.

In Bogert v. Burkhalter, 2 Barb. 525, the headnote is as follows:

"In an action to recover damages for the breach of a contract, if the damages do not necessarily arise from the breach complained of, so as to be implied by law, the plaintiff must specify in his declaration the particular damage which he has sustained, or he will not be permitted to give evidence of it."

It cannot be said that the reception of the evidence objected to was not prejudicial to the defendant. In fact, it formed the only basis for a recovery. The plaintiff, by his proof, said, in substance, "The defendant agreed to deliver to me ninety-two dozen hats for $2,685." The gross retail price of such hats in the city of Buffalo in the year 1897 amounted to $4,734. The difference between those sums is $2,052, and represents the amount of damages sustained; and the jury, by the charge of the court, and by the entire conduct of the trial, were given to understand that they were at liberty to find that such sum represented the damages sustained by the plaintiff. They rendered a verdict for $1,317.74,—more than 50 per cent. of the contract price. The fact that they did not award a larger sum in no manner indicates that the verdict was not influenced by the improper evidence received. No proof was given on the part of the plaintiff showing or tending to show what the expense of selling the hats in question at retail would have been. The cost of insurance, the cost of help and clerk hire, was not alluded to. No evidence was given to show or indicate what part, if any, of the retail price of the hats would have been uncollectible, although it does appear that such hats were often sold by the plaintiff upon credit. It appears by the evidence of the plaintiff that he was able to and did procure for his trade for the season of 1897 hats of as good quality as those manufactured by the defendant at the same or less cost; hats which sold as readily in the city of Buffalo; that during the season of 1897 he sold as many hats as ever before,

and that his business was equally good or better. It appears that of every purchase of hats from the defendant for the period of 10 years prior to the time in question a large number had been left over and remained unsold at the close of the hat season; that these were invariably sold for much less than the regular retail price. It also appears that a considerable number of each purchase invariably remained undisposed of for years, and became of so little value that they were given away by the plaintiff. No evidence, however, was given from which even the approximate number of hats purchased from the defendant, which would thus remain unsold or become worthless, could be determined. Upon the evidence it is difficult to see how the plaintiff was injuriously affected by the nondelivery of the hats in question. He had purchased from other manufacturers hats which he swears were equally as good and salable as those ordered from the defendant, and at the same price. He was enabled to purchase them in such quantities as he desired, and sufficient for the purposes of his trade. Upon the sale of the hats which he purchased he made the same profit that he would have made upon the sale of hats manufactured by the defendant. During the year 1897 his trade was as large, his business was as good, as it ever had been; yet, notwithstanding, through the medium of this action he seeks to double the business and profits of the year, and, if the verdict of the jury, by which he was given as net profits upon the goods ordered from the defendant more than 50 per cent. of the entire purchase price, shall stand, he will succeed. We think the verdict was grossly excessive, and probably as the result of the improper evidence received.

The judgment and order appealed from should be reversed, and a new trial ordered, because incompetent and improper evidence was received upon the question of the plaintiff's damages, and also because, in any event, the verdict is excessive.

WILLIAMS, J., concurs.