## LANDE v. A. G. HYDE & SONS.

(Supreme Court, Trial Term, Erie County. January 12, 1910.)

**1. SALES (§ 418*)—BREACH OF CONTRACT BY SELLER—MEASURE OF DAMAGES.**

Ordinarily the rule of damages for breach of contract of sale is the difference between the agreed price and what the goods can be purchased for in the market, but if a party agrees to sell goods, knowing they are to fill contracts on his part, the seller renders himself liable for any special damages for breach proximately and naturally resulting from his failure to deliver.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

**2. SALES (§ 418*)—BREACH OF CONTRACT OF SELLER—ACTION THEREFOR—INSTRUCTIONS AS TO DAMAGES.**

In an action by a skirt manufacturer for breach of contract to sell him a particular grade of goods which defendant knew were ordered for plaintiff's business, the court did not err in instructing as to damages that, when defendant failed to fill its contract, it was plaintiff's duty to minimize the damages from the breach; that he could not arbitrarily substitute for the goods ordered any goods he saw fit; that he might substitute other goods to fill his orders, but that he was bound to use such goods and of such quality as would reasonably meet the requirements of those who contracted with him for skirts; and that, if another grade which defendant offered to supply would have met those requirements, plaintiff could only recover nominal damages, otherwise he would be entitled to substantial damages.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

**3. SALES (§ 166*)—PERFORMANCE BY SELLER—GOODS SOLD TO MANUFACTURER.**

Where a seller could not fill an order for dress goods of a particular grade, but offered another which could be distinguished from the goods ordered only by an examination under a magnifying glass, and the difference was slightly in favor of the grade offered, the buyer, a skirt manufacturer, was not justified in rejecting it.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 391–394; Dec. Dig. § 166.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. SALES (§ 420*)—BREACH OF CONTRACT BY SELLER—ACTION—QUESTION FOR JURY.

   In an action by a skirt manufacturer for breach of contract to sell him a particular grade of goods which defendant knew he ordered for his business, evidence *held* to present a question for the jury whether plaintiff was entitled to more than nominal damages.

   [Ed. Note.—For other cases, see Sales, Dec. Dig. § 420.*]

Action by Isadore J. Lande against A. G. Hyde & Sons. There was a verdict for plaintiff, and defendant moves for a new trial. Denied.

Sanders & Hamilton, for the motion.

E. Rubenstein, opposed.

WHEELER, J. The plaintiff is a manufacturer of women's skirts, located in the city of Buffalo. The defendant is a commercial house, located in the city of New York, and known as converters and jobbers in certain grades of cotton goods called "taffitas," used in the manufacture of skirts and other garments. It designates the different grades of these goods by trade-names, to wit, the "Azalia," the "Arbutus," the "Thistle," and the "Mignon" brands, each grade differing slightly from the other grades, and each being sold at a different price to the trade. All these different grades are known and designated to the trade as "Hydegrade" goods. The house has a high commercial standing, and the goods marked as "Hydegrade" fabrics have a reputation in the trade, and are apparently in demand as excellent fabrics. To facilitate the sale of the defendant's goods of this class, the defendant has been accustomed to supply to the manufacturer buying these goods labels marked "Hydegrade," which the manufacturer is accustomed to attach to the garments manufactured to facilitate their sale. There are other houses and concerns in New York also manufacturing the same class of goods and of substantially the same quality as the defendant.

By correspondence the parties made a contract by which the defendant agreed to sell the plaintiff 300 pieces of the "Azalia" cloth at 9½ cents per yard. At the time the sale was made the defendant knew the plaintiff was a manufacturer of skirts, and selling the manufactured product to the trade, and the cloth in question was ordered for that purpose. The defendant was unable to deliver any of the "Azalia" brand, or keep its contract in that respect, and notified the plaintiff to that effect. On the suggestion of the defendant, 50 pieces of "Arbutus" cloth was substituted for a part of the order, but the plaintiff testified that, when skirts from that cloth were made up, they were rejected by his customers. Relying on obtaining the "Azalia" cloth, the plaintiff had through his traveling agents obtained orders for skirts to be manufactured from "Azalia" cloth sufficient to use up the 300 pieces agreed to be delivered. The "Arbutus" cloth proving unsatisfactory to his customers, the plaintiff repeatedly demanded delivery of the "Azalia" goods, and, the defendant being unable to comply, the plaintiff wrote the defendant that he would use as a substitute the "Mignon" goods which he had on hand, and had previously purchased from the defendant at 15½ cents per yard, and would

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

charge the defendant with the difference in price between the two grades. Before using the "Mignon" cloth, the plaintiff testified he endeavored to purchase in the market the "Azalia" cloth, and was unable to obtain it. It is undisputed that, when the defendant discovered it was unable to fill the accepted order for "Azalia" cloth, it offered to supply and substitute for it the grade of goods known as the "Thistle" brand, which is a brand of exactly the same grade and quality, except that in the process of manufacture it receives an additional treatment, making it, as claimed, a trifle better in finish, by reason of which it sold for a slightly higher price. The plaintiff, however, declined to used the "Thistle" brand, claiming he ought not to be required to experiment, or run the danger of having his manufactured skirts turned back on his hands by those who had ordered skirts from the "Azalia" goods, and he did use as a substitute the "Mignon" cloth, the difference in price amounting to some $500 and upwards, which he sought in this action to recover.

The court, in substance, instructed the jury that, when the defendant failed to fulfill its contract, it became the duty of the plaintiff to so conduct himself as to make the damages flowing from the breach as small as possible; that he had no right to act arbitrarily and substitute for the "Azalia" goods any goods he saw fit to select, but that he should have acted prudently and reasonably in view of the circumstances of the case; that he had the right to substitute other goods for the purpose of filling his orders, but in making the substitution he owed it as a duty to the defendant to use such goods and of such a quality as would reasonably meet the requirements and demands of those who had contracted with him for "Azalia" skirts; that if the jury found that the "Thistle" grade of goods which the defendant offered to supply would have met those requirements, and would not have resulted in the manufactured skirts being turned back on the plaintiff's hands, then the plaintiff could only recover nominal damages, otherwise he would be entitled to recover substantial damages, to be assessed by the jury. The jury, in fact, returned a verdict for $130. Just how the jury arrived at this sum the court is unable to determine. Nevertheless the plaintiff is not now complaining of the amount or demanding a new trial, but the defendant is, claiming the trial court erred in permitting the jury to return any verdict for more than nominal damages.

It is true that ordinarily the rule of damages for breach of contract to sell is the difference between the agreed price and what the goods can be purchased for in the market. In this case, however, no "Hydegrade" fabrics could be purchased in the market except from the defendant, and the plaintiff had agreed with his customers to supply them with "Hydegrade" skirts of the "Azalia" brand. They had a right to insist on his furnishing "Hydegrade" skirts. The defendant knew the cloth was to be furnished for this very purpose to enable the plaintiff to fulfill contracts for that kind of skirts. At least, it was left to the jury to say whether or not such was the fact. If a party agrees to sell and deliver goods knowing they are intended to enable the purchaser to fulfill contracts on his part, then for a breach of the contract the seller renders himself liable for such special damages as

are the proximate and natural results of his failure. Parsons v. Sutton, 66 N. Y. 92; More v. Knox, 52 App. Div. 156, 64 N. Y. Supp. 1101; Delafield v. Armsby, 131 App. Div. 572, 116 N. Y. Supp. 71.

In the above case of More v. Knox the court said:

"In the case of Parsons v. Sutton, 66 N. Y. 92, the correct rule, as we understand it, is stated in the headnote as follows: 'The measure of damages for breach of a contract to sell and deliver an article of merchandise at a time and place specified, when a purchaser can go into the market and buy the article, is limited to the difference in value between the contract price and the market price at the time and place of delivery. If there is no market, and the article cannot be had there with reasonable diligence, and the vendee has suffered special damages because of, and which are the proximate and natural results of, the vendor's failure, such damages may be recovered. The special damage in such case must be alleged and set forth in the pleadings of the party.' "

In the English case of Hinde v. Liddell, 10 Queen's Bench (L. R.) 265, the defendant contracted to supply the plaintiff 2,000 pieces of gray shirtings at so much per piece, but informed the plaintiff he would be unable to complete his contract by the specified time, on which the plaintiff endeavored to get the shirting elsewhere, but there was no market in England for it. The plaintiff, therefore, in order to ship according to his contract with his subvendee, procured 2,000 pieces of other shirtings of a somewhat similar quality at an increased price, which the subordinate accepted, but paid no advance in price to the plaintiff. The plaintiff sought to recover the difference between what he paid for the substituted shirtings and the defendant's contract price, and it was held that, there being no market for the article contracted for, the plaintiff, having done the best he could, was entitled to recover the difference in price. This case is cited with approval in Delafield v. Armsby Co., 131 App. Div. 572, 116 N. Y. Supp. 71, where the court reiterated the rule that "the damages for which a party may recover for a breach of contract are such as ordinarily and naturally flow from the nonperformance," applying it to a case where the defendant made an executory contract for the sale of canned Alaska salmon, and it was stated at the time of contract that the plaintiff intended to resell the same in Great Britain, and where the plaintiff did, in fact, resell the salmon at an advanced price. The defendant was unable to fulfill his contract with the plaintiff, and it was impossible for the plaintiff to purchase the salmon in the open market. It was held the measure of damages was the difference between the price at which the plaintiffs had contracted to sell the salmon and the price they were to pay for it. It was also held that the fact that no subcontract had been actually made for the resale of the salmon at the time the contract with the defendant was executed did not change the rule. The last proposition is important in the case now in hand. The orders taken by the plaintiff for "Azalia" skirts were doubtless taken by him after his contract with the defendant for the purchase of the goods, but the defendant knew he was a manufacturer of skirts, and desired their goods for the very purpose of making the skirts to fulfill orders to be obtained. The defendant had had previous dealings with the plaintiff, and thoroughly understood the na-

ture and general character of his business, and must have fully understood and appreciated the situation.

An interesting and instructive case as to the measure of damages in cases like the one now under consideration is that of Den Bleyker v. Gaston, 97 Mich. 354, 56 N. W. 763, where the plaintiff bought a particular grade of lumber cut into strips for a special purpose, and where the seller failed to deliver, and it appeared that the article contracted for was not kept for sale in the market. The court there said:

"Plaintiff was justified in avoiding, so far as he could, the consequences of the breach, and in procuring the most available substitute in the manner open to him. Indeed, it was his duty to do so. * * * The difference between the cost of the strips substituted and the contract price would be the measure of damages only so far as such substitution was actually and in good faith made."

The rule the court laid down to the jury was substantially that above quoted, and we think the court did not err in its instructions to the jury.

The only remaining question is whether the verdict was against the weight of evidence. The "Thistle" and the "Azalia" brands were practically alike. Both brands were made from the same identical gray cotton goods, having the same weave, and the same weight. When the two kinds were presented to the plaintiff on the witness stand, he was unable to tell which was the "Azalia" and which the "Thistle." The witness called for the defendant testified that a layman could not distinguish the difference between the two fabrics, and that the difference could only be discovered by an examination under a magnifying glass, and when so examined the difference was slightly in favor of the "Thistle." Under such circumstances, we think the plaintiff was not justified in rejecting the offer to supply the "Thistle" brand made by the defendant. The plaintiff had an opportunity to make the examination of the "Thistle" brand, because a sample was sent to him for that purpose. The defendant's offer, however, was not to substitute "Thistle" for the entire 250 pieces of "Azalia" they were unable to supply, but "a case of it at once," which they say will "perhaps tide you over until the other is received." See letter of May 8, 1909. If this offer had been accepted by the plaintiff, it would to that extent have diminished his claim, although perhaps not have met every damage he suffered. While the exact amount of the plaintiff's damage in this view of the matter is not very clear, we cannot say he suffered simply nominal damages, and we must accept the jury's determination of the amount, which it has fixed at $130.

We therefore are of the opinion the motion for a new trial should be denied and the verdict stand. So ordered.