EMERMAN v. COHEN et al.

No. 32, Docket 22400.

United States Court of Appeals
Second Circuit.

Argued Oct. 16, 1952.

Decided Nov. 12, 1952.

Jacobs, Leibowitz & Kahn, New York City (Edward H. Kahn and Charles B. Hochberg, New York City, of counsel), for defendants-appellants.

Cleary, Gottlieb, Friendly & Hamilton, New York City (Thomas J. Kiernan and Jerome E. Hyman, New York City, of counsel), for plaintiff-appellee.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

It was undisputed that the appellants, knowing that the appellee was buying for resale, had agreed in December 1947 to sell her 300 tons of flat steel sheets of a designated kind and quality for 11¼ cents per pound and that she paid down $16,750 as an advance on the purchase price. None of the steel was delivered and this suit was brought to recover the resulting damages. After the action was commenced the advance payment was returned to the appellee without prejudice to the rights of the parties.

There was dispute as to whether the appellant's promise to deliver the steel was absolute or conditioned upon their ability to obtain it from their supplier, which they failed to do. The jury found that delivery was not to be contingent and no question in respect to that survives.

The grounds now urged for reversal of the judgment are errors in the charge in submitting the question of damages to the jury and in the admission of evidence.

Since federal jurisdiction rests upon diversity, New York law must control as to the measure of damages. The New York Sales Act[1] provides that if, at the time of the breach, there is an available market in which the purchaser can obtain the goods, then his measure of damages shall generally be the difference between that market price and the contract price. However, where there is no market damages must be determined in some other manner, as by the profits the buyer would have made had delivery been made according to contract. Orester v. Dayton Rubber Mfg. Co., 228 N.Y. 134, 126 N.E. 510; see Todd v. Gamble, 148 N.Y. 382, 42 N.E. 982, 52 L.R.A. 225; Saxe v. Penokee Lumber Co., 159 N.Y. 371, 54 N.E. 14.

The complaint claimed damages based, in the alternative, (1) upon the difference between the contract price and the market price and (2) upon the profits appellee would have made had the steel been delivered as agreed. At the beginning of the trial the appellants moved to compel the appellee to elect between the two theories of damages but this motion was denied and no election was made.

The appellee first introduced evidence tending to show that the steel could have been resold and the amount which could have been obtained for it had the appellants delivered it in accordance with the contract. Then the appellee's business manager, who was actively engaged in the steel business during the relevant time, testified that there

[1]. Section 148 of the New York Personal Property Law, McKinney's Consol.Laws, c. 41:

"2. The measure of damages is the loss directly and naturally resulting in the ordinary course of events from the seller's breach of contract."

"3. Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

were then many transactions in which offers to buy and offers to sell steel were made. He was asked whether he could state the market price on the open market "to an end user" of such steel at the time and place of the breach. His answer began, "Yes, the market—," when he was interrupted by an objection by an attorney for the appellants who said in part: " * * * my objection to the question is based primarily on its materiality and relevancy. During his earlier testimony this witness has gone into at great length various orders that he obtained in his efforts to resell the steel which he expected to receive delivery of from the defendants. Accordingly, it is obvious that he was attempting to establish his loss of profit as the measure of his damages. Under those circumstances, what materiality has market price if his theory of damages is loss of profits? Once again I urge the Court to direct the plaintiff to make an election as to whether it is going in on the theory of market price or on the theory of reasonable value or on the theory of loss of profits."

To this the appellee's attorney replied to the effect that it was not proper to force an election, saying:

" * * * you can't have an election because under the Sales Act if there is a market, then the market price is the remedy, that is, the difference between the market price and the contract. If there is not, then it is your actual damage suffered, whatever that may be, whether it is proof by way of loss of profit or in some other fashion.

"Now this evidence we are offering at this point, the evidence of market price, is material under the Sales Act. If, in fact, it should turn out that there is some question about a market or if the jury should become convinced that there is not, in fact, a market, we should still not be deprived of our actual loss of profit."

The Court sustained the objection.

Later in the trial the appellee again tried to introduce evidence of market value and again the appellant's attorney successfully objected to it. The trial ended without any direct evidence on that score being introduced by the appellants and whether or not a market for such steel existed during the time in question was left to inference. There was undisputed evidence, however, that the appellants had been unable to obtain steel with which to fulfill their contract with appellee, and also evidence that the appellee had contracted for the purchase of the same amount and quality of steel from another party who had also failed to deliver. The evidence was undisputed that during this period such steel was in short supply.

After the judge had charged the jury, the appellants requested "that the Court charge that before the jury can consider any loss of prospective net profits on the part of the plaintiff, it must be satisfied from all the evidence in the case that the plaintiff was unable to obtain similar steel from any other person or firm at the time." The judge declined "to charge in that form," and the appellants took an exception which they now press upon this appeal.

■ The court did charge that "as a general proposition, a party damaged by a breach of contract, such as we are dealing with here, is entitled to the loss directly and necessarily resulting in the ordinary course of events from the breach of the contract. However, you will note that the party claiming to have been damaged must show that the loss results directly and naturally and in the ordinary course of events. Accordingly, if in the ordinary course of events in the business in which these parties were engaged in January, February and March 1948, the plaintiff when she learned at the end of January that the defendants were not going to deliver the steel, if, at that time, I say, she could have bought the steel in the open market at the same price or at a lower price and if she failed to do so, her loss then might be partly, at least, due to her own failure, and not directly and naturally due to the defendants' breach." While this dealt primarily with mitigation of damages, decision by the jury as to the market was made necessary before it could determine the amount of damages; and it is implicit in the verdict, which was for all the profits

860

lost, that it was found that there was no way in which damages could have been lessened by the purchase of steel in the market.

Moreover it is apparent that if the record was left too vague in this respect appellants themselves are responsible for that. It follows that they could not insist upon a charge which made recovery wholly dependent upon proof of market value after they had induced the judge to exclude the plaintiff's evidence on that subject. See Devine v. Zimmerman, 8 Cir., 133 F.2d 850, 852, and cases there cited.

To show her damages from loss of profits the appellee was permitted to introduce in evidence an order for 300 tons of the same kind of steel which she had given Consumers Steel Products Company and which it had accepted on February 11, 1948 at 13½ cents a pound, F.O.B. Cleveland, Ohio and that this order had not been filled. She was also permitted to introduce orders she had received for such steel on January 2, 1948, January 9, 1948, January 12, 1948, February 18, 1948, and March 3, 1948, which totaled 300 tons for which the price of 150 tons was 13½ cents, that of 50 tons was 12¾ cents, and that of 100 tons 14 cents. The contract with Consumers was admitted over the objection that it was not binding on the appellants and not the best evidence. The orders for steel which the appellee received were admitted over the objection that they were hearsay and not binding upon the appellants. There was nothing hearsay about this evidence in that both the contract made by the appellee for the purchase of steel and the orders taken by her for the resale of steel were themselves the evidence of what they were. The fact that the appellants were not bound as parties to them is immaterial to their admissibility. Regardless of that, they were evidence (1) that the plaintiff was unable to obtain the steel elsewhere and (2) that she could have sold the steel she had bought from the appellants at a profit provided they had delivered as agreed.

The agent of the appellee, a Mr. Schreer, who had negotiated the contract with the appellants had before the trial stated that he was to receive a commission of $20 a ton. The plaintiff's managing agent testified that the commission to be paid Mr. Schreer was $5 a ton and a letter he had written Schreer before the steel was purchased stating that to be the commission was admitted over the objection of the appellants. It is now argued that this was reversible error on the ground that it was not binding on the appellants and was hearsay. The amount of the commission was an expense which decreased the gross profits which could have been made had the steel been resold and was a proper subject of proof. The letter which fixed the amount of the commission was in no sense hearsay and the fact that the appellants were not bound as parties to that transaction is, of course, impertinent. Moreover Schreer testified at the trial that he was mistaken in his former statement that his commission was to be $20 and that it was in fact to be only $5, thus leaving the evidence as to the amount of commission entirely undisputed.

Judgment affirmed.