## MURARKA et al. v. BACHRACK BROS., Inc.

United States District Court
S. D. New York.
April 10, 1953.

Clarence P. Greer, New York City (Joseph Leary Delaney, New York City, of counsel), for plaintiffs.

Benjamin Adler, New York City, for defendant.

MURPHY, District Judge.

This action for breach of contract for the sale of goods was dismissed by this court without prejudice for lack of proof of plaintiffs' citizenship. Murarka v. Bachrack Bros., Inc., D.C., 108 F.Supp. 597. Plaintiffs' motion to reopen the case upon the sole issue of jurisdiction was granted on December 29, 1952. Additional testimony was taken and further evidence received. At this time plaintiffs moved to amend that paragraph of their complaint which reads, "That each plaintiff is an alien and subject of Great Britain," so as to state "that each plaintiff is an alien and British Indian citizen and a subject of Great Britain." Accordingly, the court makes the following

#### Findings of Fact.

1. Plaintiffs were at all times mentioned in the complaint and at the time of commencement of this action, partners, doing business as a general partnership in Delhi, India, under the name and style of Fatehchand Madangopol, and each plaintiff was an alien, British Indian citizen and subject of Great Britain.

2. At the time the complaint was filed the Government of India was an interim one recognized as such by the United States with an ambassador to Washington whose credentials were signed By His Majesty, King George the Sixth of the United Kingdom.

3. Defendant was at all times mentioned in the complaint and at the time of commencement of this action, a domestic corporation incorporated under the laws of the State of New York.

4. The amount in controversy exceeds $3,000, exclusive of interest and costs.

5. By written contract dated December 23, 1946, defendant agreed to sell to plaintiffs 10,000 new cargo rayon parachutes, 24 panels with cords, at a price of $7 each, plus 5 percent commission for plaintiffs' agent, making the total price $7.35 each. The agreement provided that irrevocable letters of credit were to be opened in favor of defendant and that the merchandise was to be sold for net cash, F.A.S. New York, delivery at once on receipt of the irrevocable letters of credit.

6. A subsidiary agreement was entered into shortly thereafter by plaintiffs' agent under which he deposited $5,000 with defendant, payable to defendant as liquidated damages in the event the letters of credit did not arrive prior to January 15, 1947.

7. On or about January 7, 1947, plaintiffs duly opened in favor of defendant irrevocable letters of credit expiring on February 10, 1947, for a total sum of $94,000. Defendant returned the $5,000 deposited by plaintiffs' agent.

8. On February 5, 1947, defendant notified plaintiffs by cable that defendant had "Booked Space Steel Advocate Sailing 15th. Extend Letters of Credit 30 Days".

9. Prior to receipt of defendant's request for such extension, plaintiffs applied for extension of such letters to February 28, 1947. Such application was made on February 3, 1947, in India.

10. On February 17, 1947, defendant duly acknowledged receipt of the extension of the letters of credit to February 28.

11. Although this extension was one for only 18 days and not for the requested 30 days, defendant accepted it and also agreed to ship the 10,000 parachutes on the S. S. "Steel Director" which was scheduled to sail from New York on February 24, 1947.

12. At the time of making the contract of sale, defendant had title to 10,000 new rayon parachutes described in the agreement but these were in a government warehouse located at the port of Newark, New Jersey.

13. On February 11, 1947, defendant's shipping and forwarding agents, acting on its behalf, prepared a shippers' export declaration for 1400 cases of rayon parachutes on the S. S. "Steel Director" for the account of the defendant and consigned to plaintiffs at Delhi via Karachi. On February 13, 1947, these agents arranged for shipment of this merchandise to Karachi on the "Steel Director".

14. Pursuant to defendant's instructions, these parachutes were removed from the government's warehouse to a pier in Brooklyn where the S. S. "Steel Director" was scheduled to dock. A total of 1521 cases were delivered to this dock in 25 shipments. The first 23 of these shipments were made between February 14 and February 25, inclusive. Such shipments consisted of 1477 cases which were marked "F M Karachi". The last two shipments, made on February 26 and 27, consisted of 44 cases and were marked "F M Bombay".

15. On February 25, 1947, defendant, acting in concert with another corporation, and without notice to plaintiffs sold the merchandise to another Indian concern, B. Durlabhji & Co., at a price of about $46,500 more than the contract price to plaintiffs. The parachutes were then shipped to this concern by way of Bombay on the "Steel Director" which sailed from New York on March 2, 1947. Notice of extension of the letters of credit to March 15, 1947 was mailed by banks in New York on March 3 to defendant who returned them to plaintiffs on March 5.

16. Subsequently plaintiffs made continued efforts to purchase similar articles at any price and were unsuccessful because none were available in the American market. Prior to February 25, 1947, plaintiffs had contracted for substantially all of the anticipated parachutes with four vendees in India at a price of 77 rupees each.

## Discussion.

■ Additional testimony and evidence on the issue of jurisdiction of this Court insofar as it depended upon satisfactory proof of plaintiffs' citizenship, was received on January 14, 1953. Plaintiffs having established their citizenship by the requisite preponderance of evidence, the decision of this Court dismissing the action without prejudice, reported in 108 F. Supp. 597, must be set aside. Plaintiffs' motion to amend their complaint with respect to allegations of their citizenship is granted.

■ Upon the preponderance of evidence adduced at trial, there is no question of defendant's breach of the contract and, consequently, the sole issue remaining is determination of plaintiffs' damages. Plaintiffs insist that in absence of available supply of parachutes in the American market, the measure of their damage is their anticipated profits on resale, and that such resale was within the contemplation of the parties. They point to defendant's letter to them of February 17, 1947 acknowledging that plaintiffs under their contract "got the last lot of parachutes in this country and you will be able to command a good price for same." Defendant, for its part, contends that the rayon cloth component of the parachutes was the merchandise actually sought by plaintiffs, and that its resale by plaintiffs was at no time even mentioned.

■ The applicable law governing measure of damages for breach of contract where jurisdiction rests upon diversity, is that of New York, Emerman v. Cohen, 2 Cir., 199 F.2d 857, 858, which provides by statute, Personal Property Law § 148:

"2. The measure of damages is the loss directly and naturally resulting in the ordinary course of events from the seller's breach of contract.

298

"3. Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

Whether or not there was an available market for the goods contracted for, plaintiffs have fallen short of establishing their anticipated profits on resale as either "the loss directly and naturally resulting in the ordinary course of events from the seller's breach of contract" or "special circumstances showing proximate damages". Defendant vendor in this case may or may not have suspected that plaintiffs' motive in acquiring the goods was their resale at profit. Clearly defendant had no notice of either contracts by plaintiffs to resell or contemplation of such contracts at the time of or prior to contracting. In Czarnikow-Rionda Co. v. Federal Sugar Refining Co., 255 N.Y. 33, 43–44, 173 N.E. 913, 916, 88 A.L.R. 1426, the rule in New York was thus stated:

"The seller's liability, in case of a breach by him, to reimburse the buyer for losses sustained through nonperformance of a contract of resale, is not conditioned upon the existence of the resale contract at the moment of the execution of the original contract; it may arise where the seller has knowledge that such a contract is in the contemplation of the buyer. [Citing cases.] On the other hand, 'Mere knowledge that goods are purchased for resale in the ordinary course of business will not take the transaction out of the general rule and place it under the exception.' If this were not so, the exception would swallow up the general rule completely, for a manufacturer or jobber must always know that a wholesaler or retailer, who buys from him, purchases for the purposes of reselling the articles bought. Setton v. Eberle-Albrecht Flour Co., [8

Cir.] 258 F. 905, 907. 'It may be said with safety that mere notice to a seller of some interest or probable action of the buyer is not enough necessarily and as matter of law to charge the seller with special damage on that account if he fails to deliver the goods.' Per Holmes, J., in Globe Refining Co. v. Landa Cotton Oil Co., [190 U.S. 540, 543, 23 S.Ct. 754, 47 L. Ed. 1171].

"Notice of the special circumstance which may cause special damage to the buyer must be had by the seller at the very time when he contracts to sell. There must be notice 'at the time of or prior to contracting.'"

The situation here presented is thus distinguishable from either one where the purchase was made to enable the buyer to carry out contracts of resale, the terms of which were known to the seller, cf. Messmore v. New York Shot & Lead Co., 40 N.Y. 422; Booth v. Spuyten Duyvil Rolling Mill Co., 60 N.Y. 487, or, on the other hand, where the seller has notice that resale is contemplated and that the buyer will be unable to procure the goods on the general market. Cf. Delafield v. J. K. Armsby Co., 131 App.Div. 572, 116 N.Y.S. 71, affirmed, 199 N.Y. 518, 92 N.E. 1083; Ehrenworth v. George F. Stuhmer & Co., 229 N.Y. 210, 128 N.E. 108; Emerman v. Cohen, 2 Cir., 199 F.2d 857.

Accordingly, the fair measure of plaintiffs' damage is "the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered," Personal Property Law, supra. Coincidentally, at virtually the very moment the goods should have been delivered to plaintiffs, they were resold to a third party at a price approximately $46,500 in excess of that specified in the contract in question. When resale is conducted so as to afford reasonable evidence of market value, and is not too long after the time for performance of the original contract of sale, market value has long been computed by resale price of the goods. Van Brocklen v. Smeallie, 140 N.Y. 70, 35 N.E. 415; Moore v. Potter, 155 N.Y. 481, 50 N.

E. 271; Latimer v. Burrows, 163 N.Y. 7, 57 N.E. 95; Ackerman v. Rubens, 167 N.Y. 405, 60 N.E. 750, 53 L.R.A. 867; Waumbek Mfg. Co. v. Alfandri, 196 App. Div. 64, 187 N.Y.S. 439; Chemung Iron & Steel Co. v. Smith & Hemenway, 203 App.Div. 624, 197 N.Y.S. 80; Frankel v. Foreman & Clark, 2 Cir., 33 F.2d 83.

### Conclusions of Law.

1. This court has jurisdiction of the subject matter and the parties.

2. Defendant without legal cause breached a contract for sale of its goods to plaintiffs.

3. The consequent damage to plaintiffs is $46,500.