**Gilbert S. GRUBER and Anthony C. Martin, doing business as International Cards, Plaintiffs,**

**v.**

**S-M NEWS COMPANY, Inc., Defendant.**

United States District Court, S. D. New York.

Dec. 8, 1954.

444

Nemeroff, Jelline, Danzig & Paley, New York City, for plaintiffs (Elliot B. Paley, New York City, of counsel).

Whitman, Ransom & Coulson, New York City, for defendant (Patrick H. Sullivan, Bernard L. Sanoff, Robert Coulson, New York City, of counsel).

MURPHY, District Judge.

Plaintiffs, invoking jurisdiction of this court on the basis of diverse citizenship, seek damages for breach of contract. Plaintiffs allege in the first count of their complaint (the other two have been withdrawn), that a contract between them and defendant was made about September 10, 1945 at their principal place of business in New York. Under this agreement, plaintiffs allege that they promised to manufacture in conformity with samples approved by defendant, 90,000 sets of twelve Christmas greeting cards for the impending Christmas season; to pack every set in a box of design approved by defendant and be ready for shipment to a list of wholesalers to be furnished by defendant not later than the second week in October; to give defendant exclusive sale and distribution rights to these sets. According to plaintiffs' complaint, in consideration of their promises, defendant bound itself to exercise reasonable diligence to sell all of the sets and use its resources for scientific sales promotion, national advertising, newsstand outlets and sales organization. Defendant further agreed, plaintiffs claim, to pay eighty-four cents for each set f. o. b. its wholesalers' respective places of business where, according to defendant's regular check-up, the cards had been sold at retail. Credit was to be allowed for all sets returned to plaintiffs unsold. It is further alleged that plaintiffs manufactured and packed the sets in accordance with the agreement, notified the defendant to this effect on October 2, 1945, and that defendant then refused its promised performance. Damages for $101,800 are demanded.

In addition to its general denial, defendant raised in answer amended by pre-trial order the defense of the New York Statute of Frauds, Personal Property Law, Consol.Laws, c. 41, § 31.

In the first trial of this action before another judge of this court the complaint was dismissed on the merits at the close of plaintiffs' case. The statute of frauds was found to be a complete defense in that the agreement was not to be performed within one year of its making. The Court of Appeals reversed, ordering a new trial on the grounds that the statute did not apply. The court observed: "There was oral evidence, supplemented by letters, sufficient to show, at least *prima facie*, that a contract had been made in terms as the plaintiff had alleged."[1]

Comparison of the record on appeal in the first trial and that of the instant trial discloses no material differences in evidence bearing upon the nature of the contract. Defendant for its case did not attempt to negative the making of the contract, probably because its merchandising manager who had negotiated with plaintiffs had died some years ago.

[1]. Gruber v. S–M News Co., 2 Cir., 208 F.2d 401, 402.

Defendant rather offered evidence purporting to establish that it had exercised reasonable diligence to sell the cards. Three of its distributors testified that they examined samples of plaintiffs' cards and considered proposed prices for them in September, 1945, and then immediately notified the merchandising manager by telephone that the cards were unacceptable, either because of quality and price, or, in one instance, because sufficient stock was already on hand. A letter from a fourth distributor also objected to the cards on the latter ground. In addition, defendant offered a single expert's testimony that the retail price of two dollars (which defendant contemplated) was excessive in view of the quality of the cards; that they would not have been sold in 1945, and that no more than five to ten thousand sets of similarly priced cards could have enjoyed nationwide sale at that time.

With respect to the sufficiency of defendant's performance, plaintiffs' expert, a New York retailer, testified that he could have sold 50 sets in 1945, and that the usual retail mark-up on such cards was 100 percent. In addition, plaintiffs offered the deposition and testimony from the previous trial of defendant's vice-president and general manager to the effect that defendant had 700 jobbers and wholesalers; that on a new line of merchandise with proper precautions to prevent loss to the manufacturer, from 80 to 85 percent could be sold, and that some years before between 85 and 90 percent of 100,000 jig-saw puzzles had been disposed of.

Under this evidence, the problems presented for resolution are in order (a) whether a contract has been made; if so, (b) the nature of its terms; and (c) whether defendant has performed or breached it; and in event of such breach, (d) the measure of damages.

■ (a) The Court of Appeals' characterization of a *prima facie* contract upon the plaintiffs' evidence alone does not foreclose a different finding by this court upon all of the evidence. Yet the evidence offered by defendant has not disclosed any material variations that would disturb the *prima facie* determination, and accordingly this court adheres to that determination.

■ (b) The terms of the agreement indicate a contract for distribution and return of 90,000 sets of cards, and not one for their sale. Defendant has again objected that the statute of frauds bars recovery, this time because more than $50 is involved. This objection, it should be noted, has not been pressed in its briefs submitted at the close of trial. In view of the nature of the terms of the agreement, we find this objection not apposite.

■ (c) It is clear that distribution of samples in September to four out of over 700 wholesalers and jobbers who in turn supply over 90,000 outlets, is not an exercise of "reasonable diligence" to sell, in the face of a binding agreement requiring production by plaintiffs of 90,000 sets by the second week in October. Accordingly, the defense of performance by defendant is far from complete, and defendant must assume liability for breach of this contract.

■■■ (d) On the question of damages, this court must follow the choice of law principle of the state in which it sits which apparently would select as governing internal law the substantive rules of New York where the contract was made and where many other contacts point.[2]

■ For breach of a contract of exclusive distribution and return, plaintiffs should be entitled to damages measured by the difference between what they actually obtained for their cards and what they would have obtained had defendant exercised its promised reasonable diligence. On this, plaintiffs have the burden of proof to the extent of a reasonably certain and definite factual basis of computation.[3] Under the evi-

**2.** Emerman v. Cohen, 2 Cir., 199 F.2d 857, 858; Jones v. Metropolitan Life Ins. Co., 158 Misc. 466, 286 N.Y.S. 4.

**3.** Hewlett v. Caplin, 275 App.Div. 797, 798, 88 N.Y.S.2d 428, affirmed 301 N.Y. 591, 93 N.E.2d 492.

dence, such basis in this case is too speculative for an award in a sum certain. The past experience of the defendant in distribution of a high proportion of jig-saw puzzles, maps and cleaning fluids is hardly a basis for prophecy with respect to Christmas cards. And a single retailer's opinion that he would have disposed of 50 boxes of the cards is a precarious foundation for generalization with respect to 90,000 such boxes. Accordingly, plaintiffs have not sustained their burden of proof with respect to their expectation under the breached agreement.

However, alternative to damages for loss of their expectation, plaintiffs have demanded at the close of trial at least their out-of-pocket expenses. The basis for these damages is not plaintiffs' expectation of profits but rather their expenditures made in "essential reliance" upon defendant's promise. Defendant, for its part, insists that there can be no recovery upon this theory of essential reliance because there would have been a loss to plaintiffs had defendant fully performed its promise of distribution.

The few cases in point in New York are apparently not entirely in accord with respect to the relationship between anticipated loss in event of full performance by the defendant, on one hand, and a plaintiff's recovery of his out-of-pocket expenses in reliance on defendant's unperformed promise, on the other.[4] There are situations where there is no such relationship, and a plaintiff may recover his expenditures in reliance upon defendant's promise without regard to profit if that promise had been fully performed by defendant, as in actions for restitution[5] and ones based upon fraud.[6] The Restatement has suggested that if full performance by defendant would have resulted in loss to a plaintiff, then this loss must be deducted from plaintiff's expenditures.[7] This rule has been followed in this circuit in a situation requiring application of the internal law of Connecticut, but where the court was unable to find a crystal clear statement of the rule in that state or in the neighboring ones of New York or New Jersey. "[O]n those occasions in which the performance would not have covered the promisee's outlay, such a result [i. e., recovery of expenses by the promisee] imposes the risk of the promisee's contract upon the promisor. We cannot agree that the promisor's default in performance should under this guise make him an insurer of the promisee's venture; * * *."[8]

■ We accept as the rule that plaintiffs' recovery for their out-of-pocket expenses must be diminished by any loss that would result from defendant's full performance. We are not persuaded that defendant has established the probability of such loss. True plaintiffs were able to obtain merely six cents per box on a sale of 40,000 boxes in 1949, rather than the promised eighty-four cents for sale in 1945 under their agreement with defendant. But the Christmas cards had a novelty appeal, designed as they were to exploit a dozen different nations at the time of the newly-formed United Nations in 1945. The glamour of the caricatures may well have been clouded by the worsening world situation that gathered in the succeeding years.

■■ The burden of proving loss in event of performance properly rests on the defendant who by its wrong has made the question relevant to the rights of the plaintiffs.[9] We do not find that defendant has sustained this burden.

■ Only the amount of plaintiffs' expenditures reasonably made in per-

4. Cf. Durkee v. Mott, 8 Barb. 423, 427; Bernstein v. Meech, 130 N.Y. 354, 29 N.E. 255 with Borough Development Co. v. Harmon, 154 App.Div. 689, 139 N.Y.S. 362.

5. 3 Williston, Contracts § 1485.

6. Prosser, Torts § 90.

7. Restatement, Contracts § 333(d).

8. L. Albert & Son v. Armstrong Rubber Co., 2 Cir., 178 F.2d 182, 189. See also Fuller, Reliance Interest in Contract Damages, 46 Yale L.J. 52, 75–80 (1936).

9. Id.; Restatement, Contracts § 333(d).

formance of the contract or in necessary preparation therefor, may be recovered. This does not include, as plaintiffs have requested, the cost of making the plates from which the cards were printed since these had already been fabricated prior to making the contract with defendant. The amount of plaintiffs' expenditures for labor and material reasonably made in essential reliance on defendant's promise was $19,934.44. From this sum must be deducted the *net* amount realized by plaintiffs from sale of 40,000 sets at six cents a set which was $2,080. Accordingly plaintiffs are entitled to $17,854.44 in damages.

Judgment accordingly.